**Philip Lempriere** (State Bar No. 143613)
Email: plempriere@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711
Facsimile: 206.292.0460
*Attorneys for Applicant,*
*Hapag-Lloyd Aktiengesellschaft*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re Application of<br><br>HAPAG-LLOYD AKTIENGESELLSCHAFT<br><br>Applicant,<br><br>For Order Authorizing Discovery For Use In Foreign Proceedings Under 28 U.S.C. § 1782 | Case No.: 4:21-mc-80107<br><br>DECLARATION OF CRYSTAL KENNEDY IN SUPPORT OF EX PARTE APPLICATION FOR ORDER AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782 |

I, Crystal Kennedy, declare:

1. I am the Director of Corporate Insurance Risk Management for Hapag-Lloyd Aktiengesellschaft ("HL") and have held that position during all relevant times mentioned in the following declaration. I submit this declaration in support of HL's Application for Order Authorizing Discovery for Use in Foreign Proceedings Under 28 U.S.C. § 1782, and based on: my personal knowledge; examination of records and documents contained in the files of HL and maintained in the regular course of business; and in certain matters and where so indicated, upon information and belief.

2. I have been the person primarily responsible for addressing claims raised by the incident voyage and for assisting HL in its efforts to obtain necessary documents from the vessel to assist HL in its defense of the cargo claims HL anticipates under the HL bills of lading.

3. I have access to HL's records that relate to the voyage as part of my regular job duties and regularly access these records as part of my job. These records are made at or near the time of the events therein reflected, by someone with knowledge of the information. The records are kept in the ordinary course of HL's business and it is the regular practice of HL to create and keep these records.

4. I have reviewed the allegations of the application and know its contents and the same are true to the best of my knowledge, information, and belief.

**The Relevant Contracts & Terms**

5. Upon information and belief, the MV ONE APUS (the "Vessel") is: (1) owned by Chidori Ship Holding LLC, a Japanese limited liability company ("Chidori"); (2) bareboat chartered to Jessica Ship Holding S.A., a Panamanian limited liability company ("Jessica"); (3) time chartered to an NYK Line-affiliate, a Japanese company; and (4) sub-time chartered by

1
DECLARATION OF CRYSTAL KENNEDY IN SUPPORT OF EX PARTE
APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

Ocean Network Express Pte. Ltd. ("ONE"), a Singaporean limited liability company. NYK Ship Management Pte., Ltd., a Singaporean company, manages the Vessel.

6. ONE, HL, Hyundai Merchant Marine Co., Ltd. ("Hyundai"), and several affiliated entities of Yang Ming Marine Transport Corp. ("Yang Ming") entered into a Vessel Sharing Agreement ("VSA") as part of an alliance in which the members are collectively referred to as "THE Alliance." Pursuant to the VSA, the companies sold cargo space on vessels owned or chartered by members of THE Alliance. The members shared space on each other's vessels. A copy of the VSA is attached as **Exhibit 1**. Members of THE Alliance that do not own or charter the ships on which they sold cargo space are referred to as "slot charterers."

7. Every shipment booked with HL is governed by a bill of lading that incorporates HL's standard terms and conditions. A copy of HL's bill of lading standard terms and conditions is attached as **Exhibit 2**. Paragraph 25 of HL's bill of lading provides that any claim or dispute arising under the bill of lading "shall be determined in the Hamburg courts to the exclusion of the jurisdiction of the courts of any other place." The German forum provided in the bill of lading is mandatory for claims against HL from most of its cargo customers, some of whom have already demanded information regarding their cargo, the nature and circumstances of the loss, and preservation of evidence relating to the casualty. Attached as **Exhibit 3** is a list of HL's customers who have thus far provided notice of intent to pursue claims for their losses, and HL expects eventual claims for all lost and damaged cargo. The mandatory forum in Hamburg is triggered because one hundred fifty-seven (157) of the lost containers, and another eighty-eighty (88) containers onboard but damaged, shipped under HL bills of lading. Attached as **Exhibit 4** is a list of HL's

containers confirmed lost as of February 3, 2021; attached as **Exhibit 5** is a list of HL's containers damaged but not lost onboard as of March 5, 2021.

8. HL has previously secured a federal district court order granting § 1782 discovery under substantially similar circumstances as the ones presented here. A copy of the Order granting such discovery is attached as **Exhibit 6**.

9. HL, along with other members of THE Alliance, is also a party to an agreement called a Cross Slot Charterparty (the "CSC"), under which each party is provided slots (cargo space) onboard vessels owned or chartered by another party. A copy of the CSC is attached as **Exhibit 7**. Under Section 8 of the CSC, the Owner must ensure that records related to each voyage are preserved and accessible to the slot charterers, and must assist in identifying witnesses and obtaining their statements and other evidence that may give rise to a claim against a slot charterer.

### The Incident

10. The incident occurred on or around November 30, 2020, when the Vessel was en route from Yantian, China to Long Beach, California and something went wrong. The Vessel reportedly rolled heavily and lost at least eight hundred forty-three (843) containers overboard, with hundreds of other containers damaged onboard. A copy of the vessel time charterer's notice of the incident is attached as **Exhibit 8**. The damaged containers were discharged, transloaded, and restowed in Japan for onward carriage to Long Beach. The full extent of cargo loss and damage has yet to be determined.

11. HL has already received claims from dozens of cargo shippers, owners, consignees, and their insurers for the lost and damaged cargo. HL expects to receive dozens more claims in the coming months. Because the mandatory German forum applies to cargo claims for the vast majority of the lost or damaged containers, HL expects litigation in Hamburg, Germany.

Documents and information from the Vessel related to the voyage and stowage of the containers are key to allow HL to defend the numerous claims for cargo loss or damage. Yet, the Vessel owners have repeatedly refused HL's requests to thoroughly investigate the incident and preserve critical evidence, including by denying access to the Vessel to examine lashing gear and related deck fittings and other securing devices likely to have failed.

12. During the more than three months that the Vessel was docked in Kobe, Japan, the vessel owners blocked HL from doing anything more than a brief, superficial walk though in limited parts of the ship and observing the container operations from a considerable distance in a small area marked on the dock. We have repeatedly asked the owners to allow a more thorough on-board investigation, but have been refused. We have made requests by email and telephone without receiving responses. When the owners have responded, they have asked us to give up and rely on ONE for information and documents. Attached as **Exhibit 9** are copies of messages from HL seeking access to the Vessel and the vessel owner's denials of access.

13. Moreover, some relevant lashing equipment was removed from the Vessel during the transloading operations in Kobe and HL was not allowed to photograph or view the equipment up close in any way. We are concerned that further delay in our inspection will result in more evidence being lost forever. Attached as **Exhibit 10** are copies of messages from HL to ONE, which under the VSA is considered the "owner" in relation to other members of THE Alliance, seeking access to the Vessel and the ONE's denials of access.

14. While the ship's schedule is subject to change, it is expected to berth at the Port of Oakland for a few days for cargo operations. Once the ship and crew leave Oakland, HL may forever lose the opportunity to examine evidence necessary in the German tribunal. Accordingly, HL seeks

discovery from the Vessel's master to collect and preserve evidence for use in the inevitable foreign actions.

15. HL also needs to have a technician knowledgeable regarding marine electronic equipment identify what equipment the ship has on board, and evaluate and extract important data from the ship's electronic equipment that the vessel owners have not yet produced. This would include identification and extraction of data from cargo and cargo lashing-related computer programs, route optimization systems, warning data for possible vessel rolling, and systems recording data for vessel motion, acceleration, and rolling.

I declare under penalty of perjury under the law of the United States of American and the State of California that the foregoing is true and correct.

Dated this 29th day of April, 2021 at Singapore, Singapore.

_____
Crystal Kennedy, Director

PDX\AMU\30684329.1