# EXHIBIT 2

### 1. Definitions
"Carrier" means the party named on page 2 of this Bill of Lading.
"Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.
"Crew" means the vessel's master, her officers, seamen and other persons directly or indirectly employed in the operation of the vessel as defined in section 478 of the German Commercial Code.
"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 without the amendments to the Protocol signed at Brussels on 23rd February, 1968.
"Hague-Visby Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February, 1968.
"US COGSA" means the US Carriage of Goods by Sea Act 1936.
"Merchant" includes the shipper, holder, consignee, receiver of the Goods or of this Bill of Lading, and any person owning or entitled to the possession of the Goods or this Bill of Lading.
"Servants or Agents" includes the master, officers and Crew of the vessel, owners, managers and operators of vessels (other than the Carrier), underlying carriers, whether acting as sub-carrier, connecting carrier, substitute carrier or bailee, sub-contractors, stevedores, terminal and groupage operators, road and rail transport operators and any independent contractors employed by the Carrier in the performance of the Carriage.
"Goods" means the whole or any part of the cargo received from the shipper and includes any equipment or Container not supplied by or on behalf of the Carrier.
"Container" includes any container, trailer, transportable tank, flat, or any similar article used to consolidate Goods and any equipment thereof or connected thereto.
"Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.

### 2. Carrier's Tariff
The terms and conditions of the Carrier's applicable Tariff are incorporated herein, with particular attention drawn to the terms and conditions relating to Containers and vehicle demurrage and detention. The provisions relevant to the applicable Tariff can be acquired from the Carrier or his Agents upon request. The Carrier's standard Tariff can be accessed online at www.hapag-lloyd.com. In the case of any inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail, except in cases relating to Freight.

### 3. Warranty
The Merchant warrants that in agreeing to the Terms and Conditions hereof he is, or has the authority of, the person owning or entitled to the possession of the Goods and this Bill of Lading.

### 4. Sub-Contracting and Indemnity
(1) The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the Carriage.
(2) The Merchant hereby agrees that no Servants or Agents are, or shall be deemed to be liable with respect to the Goods or the Carriage as Carrier, bailee or otherwise. If, however, it shall be adjudged that any Servants or Agents are a carrier or bailee of the Goods or under any responsibility with respect thereto, all exemptions and limitations of and exoneration from liability provided by law or by the Terms and Conditions including the jurisdiction clause shall be available to such Servant or Agent. If any claim is made against any of the Servants or Agents, the Merchant shall indemnify the Carrier against all consequences thereof.
(3) The provisions of Clause 4 (2) shall extend to claims of whatsoever nature against other persons chartering space on the carrying vessel.

### 5. Carrier's Responsibility
(1) Port-to-Port Shipment
(a) When loss or damage has occurred between the time of loading of the Goods by the Carrier at the port of loading and the time of discharge by the Carrier at the port of discharge, the responsibility of the Carrier shall be determined in accordance with German law making the Hague Rules compulsorily applicable. In the event the Bill of Lading has been issued in Germany or a country in which the Hague Rules are compulsorily applicable and this Bill of Lading covers a shipment from or to Germany and such aforesaid country or between such aforesaid countries, the responsibility of the Carrier shall be determined in accordance with German law, making the Hague Rules compulsorily applicable.
(b) The Carrier shall not be responsible for any fault of his personnel and of the vessel's Crew in cases of damage or loss caused by fire or explosion on board the vessel or caused by the navigation or management of the vessel, in the latter case save for damage or loss caused when executing measures which were predominantly taken in the interest of the Goods ("Error in Navigation and Fire Defenses").
(c) The Carrier shall not be responsible for any fault of other persons involved in the navigation or management of the vessel, in particular pilots on board of the vessel or the Crew of a tug boat assisting the vessel, in cases of damage or loss caused by the navigation or the management of the vessel, save for damage or loss caused when executing measures which were predominantly taken in the interest of the Goods.
(d) Prior to loading and after discharge the Carrier is not deemed to have custody of the Goods. The Carrier is not responsible for acts or omissions of a terminal operator to which the Goods were submitted either by the Carrier or the Merchant. In the event that the Bill of Lading covers a shipment to or from the USA, however, US COGSA shall be applicable before the Goods are loaded on or after they are discharged from the vessel.
(e) Unless notice of loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of the removal of the Goods into the custody of the person entitled to delivery thereof under the contract of Carriage, or, if the loss or damage is not apparent, within three (3) days, such removal shall be prima facie evidence of the delivery by the Carrier as described in this Bill of Lading and any such loss or damage which may have occurred to the Goods shall be deemed to be due to circumstances which are not the responsibility of the Carrier. The notice must clearly specify the damage. Notwithstanding the aforesaid, if a Container has been delivered to the Merchant, the Merchant must prove that the damage to or loss of the Goods did not occur during the period after delivery, when the Container was in the custody of the Merchant.
(f) Compensation shall be calculated by reference to the value of the Goods at the place and the time they are delivered to the Merchant, or at the place and the time they should have been delivered. For the purpose of determining the extent of the Carrier's liability for loss of or damage to the Goods, the sound value of the Goods is agreed to be the invoice value plus Freight and insurance if paid.
(g) In the event that the Bill of Lading covers a shipment from or to the USA US COGSA shall apply. US COGSA shall also be applicable before the Goods are loaded on or after they are discharged from the vessel in the USA.

(2) Multimodal Transport
(a) If the place of damage to or loss of the Goods is known, the responsibility of the Carrier is determined by the law which applies to this leg of Carriage.
(b) If it is established that loss or damage occurred during the port-to-port leg the "Error in Navigation and Fire Defenses" as per Clause 5 (1) (b) apply.
(c) If it is established that loss or damage occurred during the port-to-port leg for reasons stipulated in Clause 5 (1) (c) above, Clause 5 (1) (c) applies.
(d) In the event that part of the multimodal transport is a shipment to or from the USA and the damage to or loss of the Goods occurs at the time between the loading at the port of loading and the discharging at the port of discharge, US COGSA shall apply. US COGSA also applies before the Goods are loaded on or after they are discharged from the vessel in the USA.
(e) With respect to road Carriage between countries in Europe liability shall be determined in accordance with the Convention on the Contract for the International Carriage of Goods by Road (CMR), dated May 19, 1956; and during rail Carriage between countries in Europe according to the International Agreement on Railway Transports (CIM), dated February 25, 1961 [or any amendments to this Convention or Agreement].
(f) Unless notice of loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of the removal of the Goods into the custody of the person entitled to delivery thereof under the contract of Carriage, or, if the loss or damage is not apparent within seven (7) days, such removal shall be prima facie evidence of the delivery by the Carrier as described in this Bill of Lading. The notice must clearly specify the damage. Notwithstanding the aforesaid, if a Container has been delivered to the Merchant, the Merchant must prove that the damage to or loss of the Goods did not occur during the period after delivery, when the Container was in the custody of the Merchant.
(g) Compensation shall be calculated by reference to the value of the Goods at the time they were delivered to the Carrier for Carriage.
(h) IN THE EVENT THAT THE LAW WHICH IS APPLICABLE UNDER CLAUSE 5 (2) (a) IS NOT MANDATORY AND PROVIDES FOR LIABILITY EXCEEDING 2 SDRS PER KILO, THE MAXIMUM LIABILITY SHALL BE 2 SDRS PER KILO OF THE GROSS WEIGHT OF THE GOODS LOST OR DAMAGED. SDRS MEANS SPECIAL DRAWING RIGHTS AS DEFINED BY THE INTERNATIONAL MONETARY FUND.
(i) IF THE STAGE OF THE CARRIAGE DURING WHICH LOSS OR DAMAGE OCCURRED IS NOT KNOWN, THE CARRIER'S MAXIMUM LIABILITY SHALL IN NO EVENT WHATSOEVER AND HOWSOEVER ARISING EXCEED 2 SDRS PER KILO OF GROSS WEIGHT OF THE GOODS LOST OR DAMAGED.
(j) THE CARRIER SHALL NOT BE ENTITLED TO THE BENEFIT OF THE LIMITATION OF LIABILITY PROVIDED FOR IN CLAUSE 5 (2) (h) AND (i) IF IT IS PROVED THAT THE DAMAGE RESULTED FROM AN ACT OR OMISSION OF THE CARRIER OR HIS SERVANTS OR AGENTS DONE WITH INTENT TO CAUSE DAMAGE, OR RECKLESSLY AND WITH KNOWLEDGE THAT DAMAGE WOULD PROBABLY RESULT. HOWEVER, IF THE LOSS OR DAMAGE HAS OCCURRED DURING THE CARRIAGE OF GOODS BY SEA, THE CARRIER IS ENTITLED TO THE BENEFIT OF LIMITATION OF LIABILITY AS PROVIDED FOR IN CLAUSES (2) (h) EXCEPT WHERE IT IS PROVED THAT THE DAMAGE RESULTED FROM AN ACT OR OMISSION OF THE CARRIER WITH INTENT TO CAUSE DAMAGE, OR RECKLESSLY AND WITH KNOWLEDGE THAT DAMAGE WOULD PROBABLY RESULT.
(k) Subject to the applicable restrictions in statutory law and international conventions, the Carrier shall not be liable for damage caused by error in navigating or handling the vessel, including errors caused by the arrangement of group of tugs or pushers.

(3) Change of Destination by Merchant
In the event that the Merchant requests the Carrier to deliver the Goods at a port or place other than the port of discharge or the place of delivery originally designated in this Bill of Lading and the Carrier in its absolute discretion agrees to such request, such further Carriage will be undertaken on the basis that the Bill of Lading Terms and Conditions are to apply to such Carriage as if the ultimate destination agreed with the Merchant had been entered on page 2 of this Bill of Lading as the port of discharge or place of delivery.

### 6. Time for Suit
In any event, the Carrier shall be discharged from all liability in respect of loss of or damage to the Goods, non-delivery, mis-delivery, delay or any other loss or damage connected or related to the Carriage unless suit is brought within one (1) year after delivery of the Goods or the date when the Goods should have been delivered.

### 7. Sundry Liability Provisions
(1) Hague Rules/Hague-Visby Rules
In the event that suit is brought in a court other than the court as provided for in Clause 25 and such court contrary to Clause 25 accepts jurisdiction, then the Hague-Visby Rules are compulsorily applicable, if this Bill of Lading has been issued in a country where the Hague-Visby Rules are compulsorily applicable and the Carrier's liability shall not exceed 2 SDRs per kilo of gross weight of the Goods lost or damaged; if this Bill of Lading has been issued in a country in which the Hague Rules apply, the Carrier's liability shall not exceed GBP 100 per package or unit.
(2) US COGSA
Notwithstanding any of the foregoing to the contrary, in the event that suit is brought in a court in the USA and such court, contrary to Clause 25, accepts jurisdiction, then US COGSA shall be compulsorily applicable to this contract of Carriage if this Bill of Lading covers a shipment to or from the USA. The provisions set forth in US COGSA shall also govern before the Goods are loaded on and after they are discharged from the vessel. The Carrier's maximum liability in respect to the Goods shall not exceed USD 500 per package or, where the Goods are not shipped in packages, USD 500 per customary freight unit unless the nature and value of the Goods has been declared by the Merchant and inserted in writing on page 2 of the Bill of Lading and said Merchant shall have paid the applicable ad valorem freight rate set forth in Carrier's Tariff.
(3) Shipper's declared value
The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and that compensation higher than that provided for herein may not be claimed unless the nature and value of such Goods have been declared by the Merchant, agreed to by the Carrier and inserted into the Bill of Lading before shipment. In addition the applicable ad valorem freight rate as set out in the Carrier's Tariff must be paid. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. If the declared value is higher than the actual value, the Carrier shall in no event be liable to pay compensation higher than the net invoice value of the Goods plus Freight and insurance if paid. Any references to letters of credit, import licenses, sales contracts, invoices or order number and/or details of any contract to which the Carrier is not a party when shown on page 2 of this Bill of Lading shall not be regarded as a declaration of value.
(4) Limitation of Liability
It is hereby agreed by the Merchant that the Carrier qualifies as a person entitled to limit liability under any Convention or Act pertaining to limitation of liability on maritime claims, whichever is applicable. The Carrier may be the ship-owner, charterer (including a slot-charterer), manager or operator of the vessel, or salvor rendering services in connection with salvage operations. If any claims are made against the Servants or Agents, they are entitled to avail themselves of the same limitation available to the Carrier.
(5) Delay
(a) Unless expressly agreed, the Carrier does not undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or to meet any particular market or use, and the Carrier shall not be liable for any loss or damage caused by delay.
(b) If notwithstanding the foregoing the Carrier is held responsible for the consequences of any delay, the Carrier's liability is limited to an amount equal to three times of the Freight unless any lower limitation applies. The limitation does not apply if it is proved that the delay in delivery resulted from an act or omission of the Carrier or of his Servants or Agents done with the intent to cause damage, or recklessly and with knowledge that damage would probably result.
(6) Scope of Application and Exclusions
(a) The rights, defenses, limitations and liberties of whatsoever nature provided for in this Bill of Lading shall apply in any action against the Carrier for loss or damage or delay, howsoever occurring and whether the action be founded in contract or in tort.
(b) Save as otherwise provided herein, the Carrier shall in no circumstances whatsoever and howsoever arising be liable for direct or indirect or consequential loss or damage or loss of profits, unless it is established the Carrier himself acted with the intent to cause damage, or recklessly and with knowledge that damage would probably result. The Merchant shall indemnify the Carrier against any customs liabilities even if caused by loss of the Goods.

### 8. Shipper-Packed Containers
If a Container has not been packed by or on behalf of the Carrier:
(1) the Carrier shall not be liable for loss of or damage to the Goods caused by:
(a) the manner in which the Container has been packed or
(b) the unsuitability of the Goods for Carriage in the Container supplied or
(c) the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the Merchant at or prior to the time when the Container was packed or
(d) packing refrigerated Goods that are not at the correct temperature for Carriage.
(2) the Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever and howsoever arising caused by one or more matters referred to in Clause 8 (1).
(3) with regard to refrigerated Goods, the Carrier shall be deemed to have fulfilled his obligations under the contract of Carriage and shall have no liability whatsoever if such refrigerated Goods are carried in a range of plus or minus 2,5 degrees celsius in regard to any temperature indicated on page 2 of this Bill of Lading. The term "apparent good order and condition" when used in this Bill of Lading with reference to the Goods which require refrigeration does not mean that the Goods when received were verified by the Carrier as being at the temperature on page 2 of this Bill of Lading.
Where a temperature is indicated the Carrier undertakes that the Container is equipped to maintain the temperature set by the Merchant. The Merchant remains responsible for the consequences of any temperature irregularities prior to receipt or after delivery by the Carrier.
(4) Container with Goods packed by the Merchant shall be delivered to the Carrier with an intact high security seal in place, and the seal number noted in writing on this Bill of Lading by the Merchant. In the event the Container is not so sealed, the Carrier reserves the right, at Merchant's expense, to return the Container to the Merchant for resealing, or to affix a seal.

### 9. Inspection of Goods
The Carrier or any person to whom the Carrier has sub-contracted the Carriage or any person authorized by the Carrier shall be entitled, but under no obligation, to open any Container or package at any time and to inspect the Goods. If, by order of the authorities at any place, a Container has to be opened for the Goods to be inspected, the Carrier will not be liable for any loss or damage incurred as a result of such opening, unpacking, inspection or repacking. The Carrier shall be entitled to recover the costs of such opening, unpacking, inspection and repacking from the Merchant.

### 10. Carriage Affected by Condition of Goods
If it appears at any time that, due to their condition, the Goods cannot safely or properly be carried further or without incurring additional expense or taking any measure(s) in relation to the Container or the Goods, the Carrier may without notice to the Merchant take any measure(s) and/or incur any additional expense to carry or to continue the Carriage thereof, and/or sell or dispose of the Goods, and/or abandon the Carriage and/or store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier, in his absolute discretion, considers most appropriate, which abandonment, storage, sale or disposal shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any additional expense so incurred.

### 11. Description of the Goods
The shipper warrants to the Carrier that the particulars relating to the Goods as set out on page 2 have been checked by the shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the shipper, are adequate and correct. The shipper also warrants that the Goods are lawful Goods and contain no contraband.

### 12. Merchant's Responsibility
(1) All persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the fulfillment of all obligations and warranties undertaken by the Merchant either in this Bill of Lading, or required by law. The Merchant shall indemnify the Carrier against all loss, damage, expenses and fines, arising or resulting from any breach of these obligations and warranties.
(2) The Merchant shall comply with all regulations or requirements of customs, ports and/or other authorities and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including Freight for any additional Carriage) incurred or suffered by reason of any failure to so comply, or by reason of any illegal, incorrect, or insufficient marking, number or addressing of the Goods or the discovery of any drugs, narcotics, stowaways or other illegal substances within Containers packed by the Merchant or inside Goods supplied by the Merchant, or stamp duty imposed by any country, and shall indemnify the Carrier in respect thereof.
(3) If Containers supplied by or on behalf of the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Containers (free of any dangerous goods placards, labels or markings), with interiors brushed and clean, to the point or place designated by the Carrier, his Servants or Agents, within the time prescribed. Should a Container not be returned within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expense which may arise from such non-return.

### 13. ISPS Code
(1) The Merchant must comply with the requirements of the ISPS Code. If the Carrier is held liable by any State Authority or any other third party the Merchant will indemnify and hold the Carrier harmless from any damages resulting from the violation of the ISPS Code by the Merchant.
(2) The Merchant undertakes to pay the Carrier any costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code in relation to the Merchant's Goods.
(3) The Carrier is entitled to deviate the vessel to a different port and to unload the Goods there if the authorities in the port of discharge have increased its level of security according to the ISPS Code after the Goods have been loaded.
(4) The Merchant undertakes to compensate any costs and expenses suffered by the Carrier because of a delay of the vessel resulting from a violation of the ISPS Code by the Merchant.

### 14. Freight
(1) Freight shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event.
(2) Freight has been calculated and must be paid on the basis of particulars furnished by or on behalf of the shipper. If the particulars furnished by or on behalf of the shipper are incorrect, liquidated damages must be paid to the Carrier, in accordance with the applicable Tariff.
(3) All Freight shall be paid without any set-off or counterclaim unless the claim is not in dispute or confirmed by final court decision.
(4) If the Merchant fails to pay the Freight when due, he shall be liable for all costs, liquidated damages in accordance with the applicable Tariff and in particular interest which accrues until payment.

### 15. Lien
The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable by the Merchant to the Carrier under this or any other contract and for general average contributions, to whomsoever due. The Carrier may exercise his lien at any time and in any place at his sole discretion, whether the contractual Carriage is completed or not. The Carrier's lien shall extend to cover the cost of recovering any sums due. The Carrier shall have the right to sell the Goods at public or private sale without notice to the Merchant. If the proceeds of this sale fail to cover the whole amount due, the Carrier is entitled to recover the deficit from the Merchant.

### 16. Optional Stowage and Deck Cargo
(1) The Goods may be packed by the Carrier in Containers and consolidated with other goods in Containers.
(2) Goods, whether or not packed in Containers, may be carried on deck or under deck without notice to the Merchant. All such Goods whether carried on deck or under deck, shall participate in general average.

### 17. Methods and Routes of Carriage
(1) The Carrier may at any time and without notice to the Merchant:
(a) use any means of Carriage or storage whatsoever, including the utilization of railway, road vehicle or inland river services
(b) transfer the Goods from one conveyance to another, including but not limited to transshipping or carrying on another vessel or conveyance or by any other means of transport than that named on page 2
(c) unpack and remove Goods which have been packed into a Container and forward them in a Container or otherwise
(d) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route), at any speed, and proceed to or stay at any place or port whatsoever, once or more often and in any order
(e) load or unload the Goods at any place or port (whether or not such port is named on page 2 as the Port of Loading or Port of Discharge) and store the Goods temporarily at any place or port whatsoever, once or more often.
(f) comply with any orders or recommendations given by any government or authority.
(2) The liberties set out in this Clause 17 may be invoked by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including loading or unloading other Goods, bunkering, undergoing repairs, adjusting instruments, picking up or landing any persons. Anything done in accordance with Clause 17 (1) or any delay arising there from shall be deemed to be within the contractual Carriage and shall not be a deviation.

### 18. Matters Affecting Performance
If at any time the Carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of any kind including but not limited to war, civil commotion, political unrest, piracy, act of terrorism and threat thereof and howsoever arising even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or when the Goods were received for the Carriage), then the Carrier (whether or not the Carriage is commenced) may, at its sole discretion and without prior notice to the Merchant, either:
(1) carry the Goods to the contracted port of discharge or place of delivery, whichever is applicable, by an alternative route to that indicated on page 2 of this Bill of Lading or that which is usual for Goods consigned to that port of discharge or place of delivery and shall be entitled to charge such additional Freight; or
(2) suspend the Carriage of the Goods and store them ashore or afloat and endeavor to forward them as soon as reasonably possible and shall be entitled to charge such storage costs and additional Freight; or
(3) abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Merchant shall pay any additional costs of the Carriage to, and delivery and storage at, such place or port.

### 19. Dangerous Goods
(1) No Goods which are or may become dangerous, inflammable or damaging (including radioactive materials), shall be tendered to the Carrier for Carriage without his express consent in writing, and without the Container as well as the Goods themselves being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such Goods are delivered to the Carrier without such written consent and/or marking, or if in the opinion of the Carrier the Goods are or are likely to become of a dangerous, inflammable or damaging nature, they may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to the Merchant.
(2) The Merchant warrants that the Goods are sufficiently packed in compliance with all laws or regulations and requirements with regard to the nature of the Goods.
(3) Whether or not the Merchant was aware of the nature of the Goods, the Merchant shall indemnify the Carrier against all claims, losses, damages or expenses arising in consequence of the Carriage of such Goods.
(4) Nothing contained in this Clause shall deprive the Carrier of any of his rights provided for elsewhere.

### 20. Notification and Delivery
(1) Any failure to give notification of the arrival of the Goods shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.
(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff. If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and/or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall wholly cease, and the Merchant shall be responsible for the costs of such storage, as well as detention and demurrage.
(3) If the Merchant fails to take delivery of the Goods within thirty days of delivery becoming due under Clause 20 (2), or if in the opinion the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant.
(4) Without prejudice to an earlier termination by virtue of law or any other clause of this Bill of Lading the responsibility of the Carrier shall cease and the Goods shall be considered to be delivered at their own risk and expense in every respect when taken into the custody of customs or other authorities.

### 21. FCL Multiple Bills of Lading
(1) Goods will only be delivered in a Container to the Merchant if all Bills of Lading in respect to the contents of the Container have been surrendered authorizing delivery to a single Merchant at a single place of delivery. In the event that this requirement is not fulfilled the Carrier may unpack the Container and, in respect of Goods for which Bills of Lading have been surrendered, deliver them to the Merchant on a LCL basis. Such delivery shall constitute due delivery hereunder, but will only be effected against payment by the Merchant of LCL service charges and any charges appropriate to LCL Goods (as laid down in the Tariff) together with the actual costs incurred for any additional services rendered.
(2) If this is a FCL multiple Bill of Lading (as evidenced by the qualification of the tally acknowledged on page 2 to the effect that it is "One of .... part cargoes in the Container"), then the Goods detailed on page 2 are said to comprise part of the contents of the Container indicated. If the Carrier is required to deliver the Goods to more than one Merchant and if all or part of the total Goods within the Container consists of bulk Goods or inappropriate Goods, or is or becomes mixed or unmarked or unidentifiable, the holders of Bills of Lading relating to Goods within the Container shall take delivery thereof (including any damaged portion) and bear any shortage in such proportions as the Carrier shall in his absolute discretion determine, and such delivery shall constitute due delivery hereunder.

### 22. General Average & Salvage
General average to be adjusted in any currency at any place selected by the Carrier and according to the York/Antwerp Rules 1974 as amended in 1990 and 1994. Any claims and/or disputes relating to general average shall exclusively subject to the laws and jurisdictions set out in Clause 25.

### 23. Both-to-Blame Collision
The Both-to-Blame Collision clause published by the Baltic and International Maritime Council and obtainable from the Carrier or his agents upon request is hereby incorporated into this Bill of Lading.

### 24. Validity
In the event that anything herein contained is inconsistent with any applicable International Convention or national law which cannot be departed from by private contract, the provisions hereof shall to the extent of such inconsistency but not further be null and void. Unless otherwise specifically agreed in writing between the Merchant and the Carrier, the Terms and Conditions of this Bill of Lading supersede any prior agreements between Merchant and Carrier.

### 25. Law and Jurisdiction
Except as otherwise provided specifically herein any claim or dispute arising under this Bill of Lading shall be governed by the law of the Federal Republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of the courts of any other place. In case the Carrier intends to sue the Merchant the Carrier has also the option to file a suit at the Merchant's place of business. In the event this clause is inapplicable under local law then jurisdiction and choice of law shall lie in either the port of loading or port of discharge at Carrier's option.

90147345 L.V. 03/13 Printed 03/13