# EXHIBIT 10

## Law Offices of
# TODA & CO.

New Shinsaka Bldg. 6th Floor
8-10-22, Akasaka
Minato-ku, Tokyo 107-0052 Japan

Telephone: 81-3-3405-6345
Facsimile: 81-3-3404-3035
E-mail: todalaw@todalaw.co.jp
firstname.lastname@todalaw.co.jp

戸田総合法律事務所

〒107-0052　東京都港区赤坂 8 丁目 10 番 22 号
ニュー新坂ビル 6 階

---

<u>E-MAIL LETTER</u>
(1 page in total)

December 9, 2020

WITHOUT PREJUDICE

TO: The Shipowners of the ONE APUS
C/O Lawyer Teruyuk Sago, Okabe & Yamaguchi

Dear Sago-sensei,

<u>RE: ONE APUS – Containers lost overboard en route from Long Beach to Yantian</u>

1.  We are acting for and on behalf of a member of alliance/slot charterer of the ONE APUS (hereinafter, referred to as the vessel), Hapag-Lloyd in respect of the captioned matter.

2.  We hereby request you to provide us with copies of the documents in the attached list and the following information;

    (1) Copy of the vessel's Lashing Program together with copies of the approval documents for it – i.e. test cases, the Class approval Certificates and any DAD (Design Appraisal Document) that was issued for it.
    (2) Criteria on which the lashing forces were calculated – i.e. roll angle / GM / Wind force / Lashing arrangement used / details of the lashing gear (diameter of the bars / elasticity) / height and stiffness of the lashing bridge assumed etc.
    (3) Container Monitoring logs/data during the voyage

3.  We look forward to hearing from you as soon as possible.

Yours sincerely,

*[signature]*

Takeya Yamamoto / Yohei Ito
Law Offices of Toda & Co.

---

Lawyers: MITSUHIRO TODA, TAKEYA YAMAMOTO, YOHEI ITO, MICHIO AOKI, YUSUKE KODATE
Marine Proctors: Capt. EIICHIRO TOMIOKA, Capt. AKIRA UBUKATA, SHUJI YAMATANI (Chief Engineer)
Claims Manager: OSAMU BABA



NAVAL ARCHITECTURE • MARINE OPERATIONS • ENGINEERING • OFFSHORE

## LIST OF DOCUMENTS REQUIRED FOR A CONTAINER STOW COLLAPSE INVESTIGATION

We would request the following information in order to investigate this matter;

### General
1. General arrangement for the vessel
2. Sea protest
3. Crew statements
4. The environmental conditions at the time of the incident (roll angle/windspeed/wind direction)
5. A copy of the charterparty for the vessel

### Stowage
6. A full set of container bay plans for departure
7. A BAPLIE file for the incident voyage
8. Any amendments to load plans during loading
9. Record of lashing force calculations (if any) for all bays on departure from last load port

### Stability
10. Calculated stability condition for departure including disposition of all weights (from class approved loading instrument)
11. Calculated stability condition for time of incident (if materially different from the departure condition) including disposition of all weights (printed out from class approved loading instrument)
12. Daily tank sounding records for ballast, fuel and bilges
13. Copy of approved stability book
14. Records of any ballast or fuel transfers on voyage

### Lashing/Securing
15. A full copy of the vessels class society stamped approved Cargo Securing Manual (CSM) and a copy of any Design Appraisal Document or letter issued in relation to the approval.
16. Latest inventory of container fittings and securing devices
17. Certificates for container fittings and securing devices
18. Written lashing orders at load ports on this voyage to crew and / or lashing gangs
19. Written checklist of lashing inspection after each load port on this voyage
20. A description of the lashing arrangement in use on the voyage if different from that specified in the vessels CSM

TMC Marine, Standon House, 21 Mansell Street, London E1 8AA • Telephone: +44 (0)20 7237 2617

EUROPE • ASIA • AUSTRALASIA • THE AMERICAS

TMC (Marine Consultants) Ltd • info@tmcmarine.com • www.tmcmarine.com
Registered in London No. 1414292 at
5th Floor, Standon House, 21 Mansell Street, London E1 8AA




TMCF043(LDN)1.17

LIST OF DOCUMENTS REQUIRED FOR A CONTAINER
STOW COLLAPSE INVESTIGATION



### Weather
21. Copies of weather routeing information exchange
22. Copies of vessel's Passage Plan
23. Copies of all weather reports and forecasts received on the voyage

### Correspondence & Records
24. Copies of relevant correspondence between the vessel and operators / charterers during the voyage
25. Copies of master's night order book and any standing instructions
26. Copies of owner's standing instructions relating to container stowage and bad weather
27. Copies of Master and Deck Officer Certificates of competency
28. Copies of rough and fair Deck Logbooks for the voyage
29. Copies of rough and fair Engine Logbooks for the voyage
30. Copies of data logger or bell book print out for the voyage
31. Copy of course recorder for voyage
32. Copy of barograph trace for voyage
33. Copy of chart in use at the time of the incident
34. Copy of Chief Officer's daily notebook
35. Ship speed / Engine RPM Table
36. VDR Records for voyage
37. Copy of GPS positions recorded for the Voyage



December 11, 2020

**Rodney Q. Fonda**
Direct Phone 206.838.7551
Fax: 206.838.7515
RFonda@nicollblack.com

**VIA EMAIL**
fernandez@freehill.com

Michael Fernandez
Freehill Hogan & Mahar LLP
80 Pine Street,
New York, N.Y. 10005-1759

  Re: **ONE APUS**

Dear Mike:

I received your message earlier today. I understand that Hapag Lloyd does not own or operate the vessel, but that circumstance does not allow Hapag Lloyd to avoid a spoliation argument. The Service Agreement obligates Hapag Lloyd to carry NIKE's goods, in exchange for payment. If NIKE's goods are lost or damaged during shipment, NIKE's sole remedy is against Hapag Lloyd. Paragraph 18.3 of Schedule B of the Service Agreement makes Hapag Lloyd responsible for errors or omissions of its sub-contractors. The vessel owner is a sub-contractor Hapag Lloyd chose, not NIKE.

At this point it is unclear what the current status is of the 33 NIKE containers that were aboard the ONE APUS in accord with the NIKE/Hapag Lloyd Service Agreement. If there is loss or damage to the NIKE goods in those 33 containers, NIKE will make a claim against Hapag Lloyd in accord with the Service Agreement. If that claim is denied, NIKE's remedy is to seek arbitration in New York.

The point of our notification is to reiterate what I set forth in my letter of December 7, 2020, to Brad Crollard, NIKE's commercial contact for Hapag Lloyd in Seattle. If NIKE's designated marine surveyor is not allowed on deck to view the evidence before that evidence has been changed, we will make a claim for spoliation.

In addition to NIKE's need and right to inspect the evidence on board the ONE APUS, there is an additional consideration. NIKE's surveyor in Tacoma a month ago noted certain deficiencies in the lashing arrangement, the container fittings, and the overall container stowage situation system, on the ONE AQUILA. We understand that the ONE AQUILA and ONE APUS are "sister ships" and we know that both vessels departed from Yantian, bound for Long Beach, until they both suffered the loss of containers overboard in the Pacific. If NIKE's surveyor in Japan is not allowed to inspect the vessel before the evidence has changed so that he can compare the

situation on board ONE APUS to ONE AQUILA, NIKE will have to assume that the procedures on both vessels were the same.

Okabe & Yamaguchi, the lawyers representing the vessel owner, sent me correspondence proposing extraordinary conditions without merit, specifically that NIKE select an "exclusive" surveyor other than NKKK and sign a Confidentiality agreement. On behalf of NIKE I rejected those conditions and asked what authority the vessel owner had to request them. I have heard nothing further from Okabe & Yamaguchi since that time.

I have, however, received further advice of the vessel owner's obstruction of the investigation at the vessel. Overnight, I received a report I received from NKKK, NIKE's surveyor on site at the vessel in Kobe. The surveyor reported as follows (all punctuation and wording as per original):

> At around 11:00 am, we tried to check the twist locks, remaining on the discharged containers but Mr. Akatsuka of Okabe & Yamaguchi Counsellors at Law, the lawyer appointed by the vessel's owner, stopped us and said "Don't take photos the ship's lashing devices because it belongs to the owner. If you do not follow our instruction, we will revoke your permission to enter the yard." Moreover, at around 13:25 pm, Mr. Joya of SCUA MCO Japan, the surveyor appointed by the owner's P & I club notified us through the charterer's surveyor that all photographing was prohibited if the containers have twist locks.

This obstruction of NIKE's marine surveyor's investigation is precisely the type of activity I have protested as not allowing NIKE an opportunity to inspect the evidence before it is altered. Clearly the condition of the twist locks is of enormous importance in determining whether the containers were secured on deck properly. Furthermore, the twist locks were an issue that NIKE's surveyor noted in his inspection of the ONE AQUILA.

We also note that the obstruction occurred on the dockside, not on the vessel. Accordingly, any notion that the obstruction results from "operational, health and safety concerns" is erroneous.

If NIKE's investigation of the ONE APUS continues to be impeded, we will claim spoliation as previously discussed. We understand Hapag Lloyd does not agree with our position in that regard. Be that as it may, we request that Hapag Lloyd instruct the vessel owner not to impede the investigation. Such a request would ultimately benefit both NIKE and Hapag Lloyd if an argument over spoliation can be avoided altogether.

If there are ways that NIKE can assist Hapag Lloyd in this request to allow access, please let us know. NIKE's surveyor, NKKK, remains ready to make its inspection as soon as it is allowed to do so.

Michael Fernandez
December 11, 2020
Page 3

_____

If the vessel owner, Hapag-Lloyd's sub-contractor, continues to resist NIKE's request to inspect before the evidence is changed, it is Hapag Lloyd against whom NIKE's claim for spoliation will ultimately be made.

Very truly yours,

NICOLL BLACK & FEIG, PLLC

*[signature]*

Rodney Q. Fonda

| | |
|---|---|
| **From:** | sago |
| **To:** | takeya.yamamoto@todalaw.co.jp; todalaw@todalaw.co.jp |
| **Cc:** | akatsuka; Takashi Hongo; sago |
| **Subject:** | Re: ONE APUS_onboard survey |
| **Date:** | Monday, December 14, 2020 9:12:49 PM |

Dear Mr. Yamamoto,

Reference is our telecon this morning.

We received your strong demands to accept your surveyors onboard and to provide the requested documents.

In terms of onboard survey, we are afraid that it would not be easy to accept your surveyors onboard.  Under the COVID-19 pandemic, we are strongly required to restrict the number of onboard personnel in order to completely avoid the spread of the COVID-19 in the Vessel where is very limited space. And also,  the condition of the vessel/containers is so dangerous that we would like limit the number of the onboard surveyors for safety reason as well.
On the other hand, we encourage you to collect the information and evidences (that ONE's surveyors obtained in the Vessel) from ONE. ONE is now carrying out very detailed onboard investigation. We believe that ONE should have obtained or would obtain enough on-site information/evidences through such detailed survey. This said approach should be much more reasonable in the circumstances that, we believe, there is any Alliance agreement between your clients and ONE.
In actual, we accepted ONE's onboard survey on the strict condition that the information/evidence obtained onboard is not disclosed to any other third party including your clients.  The said proposal means that we would surely lift such condition and let ONE freely give their obtained information/evidence to your clients,  but hopefully to the extent necessary for your clients defense against the cargo interests. On the other hand, instead, we would like you to give up your idea of the onboard survey and the relevant legal procedure.

We commit ourselves that, if you agree with the above, we will lift the said condition and lay out a situation that you can get the information/evidence (obtained by ONE through their onboard investigation) from ONE.
It is noted that we have not obtained any approval from ONE. The said arrangement is subject to ONE's approval.

In terms of the documents, as mentioned over the phone, we believe that you should approach to ONE. The documents request should be made through charter chain. In actual, we do not have any authority to restrict ONE's documents disclosure to any.  All are on ONE's discretion.

We believe that the above would be very much reasonable. It would be appreciative if you could let us have your affirmative reply.
We look forward to hearing from you.

Kind Regards,

Teruyuki Sago

----------------------------------------------------

OKABE & YAMAGUCHI
5th Floor Eiha Shinkawa 5-17,
Shinkawa 1-Chome, Chuo-Ku,
Tokyo 104-0033
TERUYUKI SAGO
Attorney at Law/ Partner
TEL   : 81-3-3555-7931
FAX   : 81-3-3555-7934
MOBILE: 81-90-2416-6924
E-mail: te-sago@olo.gr.jp
Website: http://www.olo.gr.jp/en/

----------------------------------------------------