ALAN NAKAZAWA, State Bar No. 84670
alan.nakazawa@cwn-law.com
JOSEPH A. WALSH II, State Bar No. 143694
joe.walsh@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

Attorneys for Chidori Ship Holding
LLC and Jessica Ship Holding SA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| In re Application of | Case No. 4:21-MC-80107 LB |
|---|---|
| HAPAG-LLOYD AKTIENGESELLSCHART, | **OPPOSITION OF CHIDORI SHIP HOLDING LLC AND JESSICA SHIP HOLDING SA TO APPLICANT HAPAG-LLOYD AKTIENGESELLSCHAFT'S APPLICATION FOR DISCOVERY PURSUANT FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782** |
| Applicant, | |
| For Order Authorizing Discovery For Use In Foreign Proceedings Under 28 U.S.C. § 1782 | |

# TABLE OF CONTENTS

I.      INTRODUCTION………………………………….……………………2

II.     STATEMENT OF FACTS…………………………………………………3

A.     The Owners and Other Pertinent Parties..………………………………...…3

B.     HL's Conclusory Suggestions About Urgency or the Need to Preserve
       Evidence to Prevent Spoliation Are Not Persuasive; the Vessel was in Kobe,
       Japan for Three Months After the Incident, but HL did not Apply to a
       Japanese Court for Discovery, and its Present Application does not Explain its
       Failure to do so.……………………………………………………………4

C.     HL does not Accurately Describe Prior Proceedings in the Central District of
       California.………………………………………………………….....4

D.     Contrary to HL's Arguments, the Owners have Cooperated with HL's
       Discovery Efforts and have Reasonably Sought Limits on HL's Manifestly
       Overbroad, Intrusive, and Unduly Burdensome Requests.…………………...6

E.     COVID-19 and related concerns…………………………………...………7

III.    HL HAS NOT SHOWN A BASIS FOR AN ORDER GRANTING
        ASSISTANCE UNDER SECTION 1782…………………………………….8

A.     HL has not shown that the Owners are "Found" Within this District for
       Purposes of Section 1782, or that this Court has Personal Jurisdiction Over
       the Owners (as Opposed to the Vessel and her Crew)………………………...9

B.     Even if HL's Application Satisfies the Statutory Requirements of
       Section 1782, the Pertinent *Intel* Factors Weigh Against Granting
       HL's Application…………………………………….………………12

       1.     The Application Conceals An Attempt To Circumvent Proof-
              Gathering Restrictions and Policies of a Foreign Country,
              Specifically Japan.…………………………………………….....12

       2.     HL's Application is Unduly Intrusive and Burdensome…………..…14

IV.     CONCLUSION…………………………………………………...……20

i

**TABLE OF AUTHORITIES**

**CASES**                                                                                    **Page(s)**

*AM Trust v. UBS AG*

     681 Fed.Appx. 587 (9th Cir. 2017)…………………………………….……11

*Asarco, Inc. v. Glenara, Ltd.*

     912 F.2d 784 (5th Cir. 1990)………………………………………………...11

*Astronics Advanced Electronics Systems Corp. v. Lufthansa Technik AG*

     561 Fed.Appx. 605 (9th Cir. 2014)………………….....……………………9

*Burnham v. Superior Court of California, County of Marin*

     495 U.S. 604 (1990)……………………………………………………10

*California Expanded Metal Products Company v. Klein*

     2021 WL 1390356 *3 (W.D. Wash. Mar. 31, 2021)…………………….16, 18

*Daimler AG v. Bauman*

     571 U.S. 117 (2014)……………………………………...……………10, 11

*In re del Valle Ruiz*

     939 F.3d 520 (2d Cir. 2019)…………………………………….....9, 10

*In re Ex Parte Application of Qualcomm, Inc.*

     162 F.Supp.3d 1029 (N.D. Cal. 2016)…………….…………………………14

*In re Ford Motor Co.*

     345 F.3d 1315 (11th Cir. 2003)……………….....………………16, 17, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*

     564 U.S. 915 (2011)…………………………………………………11

*Gov't of Ghana v. ProEnergy Servs., LLC*

     677 F.3d 340 (8th Cir. 2012)……………………………………….....14

*Intel Corp. v. Advanced Micro Devices, Inc.*

     542 U.S. 241 (2004)……………………………………...……………2, 8

*Khrapunov v. Prosyankin*

     931 F.3d 922 (9th Cir. 2019)……………………………….…………8

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

*Knaggs v. Yahoo! Inc.*
    2016 WL 3916350 *7 (N.D. Cal. July 20, 2016)……………………………14

*Martinez v. Aero Caribbean*
    764 F.3d 1062 (9th Cir. 2014)……………………………………………10

*Matter of Application of O2CNI Co., Ltd.*
    2013 WL 5826730 *12 (N.D. Cal. Oct. 29, 2013)………….…………14, 18

*Midcap Funding XVIII Trust v. CSC Logic, Inc.*
    2021 WL 949601 *5 (C.D. Cal. Mar. 12, 2001)……………….…………10

*Moser v. Health Insurance Innovations, Inc.*
    2018 WL 6735710 *5 (S.D. Cal. Dec. 21, 2018)……………………….16

*Owens v. Kristen Gerhard Jebsen Skipsrederi A/S*
    2008 WL 4067431 *2 (M.D. Fla. Aug. 27, 2008)……………...…………11

*Powers v. Thomas M. Cooley Law Sch.*
    2006 WL 2711512 *5 (W.D. Mich. Sept. 21, 2006)……….……………. 18

*In re Request for International Judicial Assistance from the Sixteenth Family Court*
    2014 WL 1202545 *1 (N.D. Cal. Mar. 19, 2014)……………….…………9

*In re Sargeant*
    278 F.Supp.3d 814 (S.D.N.Y. 2017)…………...……………………….11

*SEC v. Strauss*
    2009 WL 3459204, *12 n. 8 (S.D.N.Y. Oct. 28, 2009)…………..……….16

*Société Nationale Industrielle Aérospatiale v. U.S. District Court*
    482 U.S. 522 (1987)…………………………………………………13

*Vasudevan Software, Inc. v. Microstrategy, Inc.*
    2013 WL 1366041 * 2 (N.D. Cal. Apr. 3, 2013)……………………….…18

*In re Vitamins Antitrust Litigation*
    120 F.Supp.2d 45 (D.D.C. 2000)……………………………………12

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

1

**STATUTES**

2   28 U.S.C. § 1782.………………………………………...………………*passim*

3   Fed. R. Civ. Proc. 26(b)(1)……………………………………………………14

4   Fed. R. Civ. Proc. 34.…………………………………………………15, 16, 17

5   Fed. R. Civ. Proc. 45(d)(1)……………………………………….………15

6

7   **OTHER**

8   Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for

9       Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 127-128

10       (2018)……………………………………………………………16, 17

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

## MEMORANDUM OF POINTS AND AUTHORITIES

CHIDORI SHIP HOLDING LLC ("CHIDORI") and JESSICA SHIP HOLDING SA ("JESSICA") (collectively the "Owners") hereby appear for the sole purpose of submitting their opposition to HAPAG-LLOYD AKTIENGESELLSCHAFT'S ("HL's") Ex Parte Application for an Order Authorizing Discovery for Use in Foreign Proceedings Under 28 U.S.C. § 1782.

## I.    INTRODUCTION

HL seeks far-reaching discovery, including extremely broad inspections of computer systems, aboard the M/V ONE APUS, a containership that is currently in San Francisco Bay awaiting a berth in Oakland.  HL does not suggest that this Court has personal jurisdiction over the foreign Owners, who own the Japanese-flagged Vessel.  Instead, HL has purported to use "tag jurisdiction" to seek issuance of a subpoena to the Master of the Vessel, as a springboard for far-reaching discovery of documents and information that belong to the Owners, not the Master, even though no lawsuit is currently pending against the Owners in any jurisdiction.  HL now feigns urgency even though HL made no effort to earlier obtain discovery orders from Courts in Japan while the Vessel was in Kobe, Japan for 3 months, following the November 2020 incident that led to this dispute.

HL's Application should be denied for the following reasons, explained more fully below: (1) HL has not met the statutory requirement of showing that the Owners "reside" or 'are found" in this District, and HL has not shown that this Court has personal jurisdiction over the Owners; (2) the Court has wide discretion to deny HL's Application under factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), specifically HL's effort to evade proof-gathering restrictions and policies of a foreign country, and the "unduly intrusive and burdensome" nature of HL's discovery requests; and (3) HL's extremely broad request for unfettered access to electronically stored information and computer systems aboard the Vessel is inconsistent with well-recognized limitations on such

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

1 discovery under the Federal Rules of Civil Procedure, and it is not justified – HL has

2 not adduced any evidence that any documents, information or data are actually at

3 risk of being lost; the Owners have reasonably cooperated with HL's discovery

4 efforts; and there are far less intrusive ways for HL to get any additional documents

5 and information it claims to need.

6 **II.     STATEMENT OF FACTS**

7          The Owners respectfully refer the Court to the concurrently-filed Declaration

8 of Alan Nakazawa for a detailed discussion of the pertinent facts.  The facts are

9 summarized below.

10          **A.     The Owners and Other Pertinent Parties.**

11          Chidori is a Japanese company, and the registered owner of the M/V ONE

12 APUS (the "Vessel"), a large and new Japanese flag containership.  Nakazawa Decl.

13 ¶ 5.  Jessica is a Panamanian company, and is the bareboat charterer of the Vessel.

14 *Id.* ¶ 6.  Jessica time-chartered the Vessel to Nippon Yusen Kaisha, Ltd. ("NYK"), a

15 Japanese vessel operating common carrier which, in turn, time-chartered the Vessel

16 to Ocean Network Express ("ONE"), a Singapore vessel operating common carrier.

17 *Id.* ¶ 7.

18          ONE has a Vessel Sharing Agreement ("VSA") and Cross Slot Charterparty

19 ("CSC") with HL and slot charterers Yang Ming Transport Corporation ("YM") and

20 HMM Co. Ltd. ("HMM").  Under the VSA and CSC, ONE, HL, YM and HMM

21 share space on each other's vessels.  *Id.* ¶ 8.

22          In this case, HL had containers on board the Vessel pursuant to its VSA with

23 ONE.  *Id.*  Under the VSA and CSC between HL and ONE, HL is responsible to

24 handle cargo claims brought by its customers under the bills of lading issued by HL.

25 *Id.* ¶ 9.  Under the CSC, the "Owner" is ONE – the operator of the Vessel – not the

26 Owners of the Vessel (i.e., Chidori and Jessica).  *Id.* ¶ 10.  Hence, ONE is the entity

27 that "must ensure that records related to each voyage are preserved and accessible to

28 slot charterers, and must assist identifying witnesses and obtaining their statements

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

and other evidence that may give rise to a claim against the slot charterer" under Section 11 of the CSC. *Id.* ¶ 9.  In other words, it is HL's Alliance Partner ONE, not Owners here, who are to share documents and other evidence with HL and the other slot charterers. *Id.*

**B.    HL's Conclusory Suggestions About Urgency or the Need to Preserve Evidence to Prevent Spoliation Are Not Persuasive; the Vessel was in Kobe, Japan for Three Months After the Incident, but HL did not Apply to a Japanese Court for Discovery, and its Present Application does not Explain its Failure to do so.**

The casualty occurred during the Vessel's voyage from the Far East to Long Beach in November 2020.  Nakazawa Decl. ¶ 11.  As a result of the casualty, the Vessel diverted to Kobe, Japan, where the damaged containers were discharged, the Vessel was inspected, and repairs were undertaken. *Id.*  The Vessel was in Kobe for approximately 3 months, between December 2020 and March 2021. *Id.*

While the Vessel was in Kobe, HL requested, and was permitted, to have its surveyor inspect the on-deck cargo spaces. *Id.* ¶ 12.  But while the Vessel was in Kobe for approximately 3 months, HL did not apply to a Japanese court for evidence, or for further examination of the Vessel, documents, or the Vessel's computers and equipment. *Id.*

The Vessel departed Kobe in March 2021, and arrived at Long Beach anchorage on or about April 2, 2021. *Id.* ¶ 14.

**C.    HL does not Accurately Describe Prior Proceedings in the Central District of California.**

On March 26, 2021, before the Vessel arrived in Long Beach, HL filed an ex parte Application for discovery under Section 1782 in the Central District of California.  Nakazawa Decl., ¶ 15, Ex. "A."  HL's Application was overbroad and all-encompassing; it sought more than 130 categories of records, including electronically stored information ("ESI"), to be produced by April 6, 2021. *Id.* ¶ 16.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

It also sought broad on board inspections, and depositions of the foreign Master and Chief Office (who were not on board the Vessel at the time of the incident and were not percipient witnesses) on expedited notice.  *Id.*

Not surprisingly, even before any opposition was filed by Owners, Magistrate Judge John Early issued a Report and Recommendation recommending that the District Court deny HL's application.  *Id.* ¶ 17, Ex. "B."  Judge Early did not decide whether HL has met the statutory requirements of Section 1782.  *Id.* ¶ 18.  He did make findings and conclude, however, that the discovery HL sought "is unduly burdensome and intrusive, and the factor weight heavily against granting the Motion."  *Id.*, Ex. "B" pp.  8, 9.

In an April 9th hearing, Judge Earl encouraged the parties to try to reach an agreement on the discovery so the court would not have to rule on HL's application for leave to file an amended application, and such an amended application.  *Id.* ¶ 21. The Owners' counsel thereafter had several discussions with counsel for HL and the other slot charterers HMM and YM (who had also filed discovery applications / petitions in the Central District of California).  *Id.* ¶ 22.  Counsel cooperated in reaching an agreement to narrow the scope of the discovery sought by HL, HMM and YM, and entered into a Discovery Agreement.  *Id.*¶ 22; Ex. "C."

Because the parties reached the Discovery Agreement, Judge Early withdrew his Report and Recommendation, and denied HL's ex parte Application to file an Amended Application, as moot.  *Id.* ¶ 23.

The Vessel did not flee the Central District as HL appears to suggest.  All parties and counsel were aware that the Vessel had containers to discharge in Oakland, and would be proceeding there.  *Id.* ¶ 29.

Finally, , the Owners did not admit that the Central District of California has personal jurisdiction over them.  Owners instead challenged jurisdiction when they opposed the application by another Slot Charterer, Yang Ming Marine Transport Corporation.  *Id*. ¶ 36; *See* Ex. "E," "Opposition of Chidori Ship Holdings LLC and

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

Jessica Ship Holding SA to Applicant Yang Ming Marine Transport Corp.'s Petition for Order Authorized Discovery Pursuant to FRCP, Rule 27 and 28 U.S.C. § 1782," C.D. Cal. Case No. 8:21-mc-00016 DOC (JDEx) (Dkt. 19), p. 9 ("while the Vessel and her crew are 'found' within the district for purposes of § 1782, YM has made no showing that the Owners are found within this district").

**D.** **Contrary to HL's Arguments, the Owners have Cooperated with HL's Discovery Efforts and have Reasonably Sought Limits on HL's Manifestly Overbroad, Intrusive, and Unduly Burdensome Requests.**

Contrary to what HL suggests, the Owners have not withheld documents and ESI.  Nakazawa Decl. ¶¶ 25, 26, 27.  The Owners have responded reasonably and diligently in producing the requested documents to HL and the other slot charterers. *Id.* ¶¶ 25, 26, 27.

As of May 3, 2021, Owners have produced more than 3,700 pages of documents and substantial ESI (over 49 GB), including ESI from the Vessel's Voyage Data Recorder ("VCR") and various computer systems.  *Id.* ¶ 27 While there are a few categories of documents to still address, the Owners have reasonably complied with HL's documents requests, pursuant to the Discovery Agreement.  *Id.* ¶ 28 The Owners' counsel continues to work with HL's counsel, Philip Lempriere, to seek clarification on some of the requests, and narrow their scope to reduce the burden on the Owners.

Based on HL's current Application to this Court, there are 9 remaining categories of documents and ESI that HL asserts the Owners have not adequately responded to.  As noted above, the Owners have produced a substantial volume of documents and ESI in response to these remaining categories.  Some categories, like the request for "all data" files from the Load Computer for departure from Yantian are still too broad and intrusive, but Owners are endeavoring to collect the data and produce it to HL.  *Id.* ¶ 31.  Owners anticipate a supplemental production of

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

Case No. 4:20-MC-80107 LB
OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

1  additional documents and ESI by Wednesday, May 5, 2021, and believe it should

2  satisfy the remaining items on HL's list.  *Id.*  ¶¶ 32, 34.

3     **E.     COVID-19 and related concerns.**

4     Contrary to the assertion made by HL in footnote 2 on page 9, and in Philip

5  Lempriere's declaration (Dkt. 2) in paragraph 8, Owners did not avoid allowing

6  HL's surveyor to go in the enclosed spaces of the Vessel (e.g. bridge, deck offices,

7  engine room and accommodations) by asserting it was not unnecessary because

8  Owners would provide the documents subject to the agreement narrowing the scope

9  of discovery sought.  Owners did not want any third party to enter the enclosed

10 spaces of the Vessel to avoid contact with the crew because of COVID-19 concerns

11 and in order to avoid a "fishing expedition" by HL and its surveyors.  The Owners'

12 counsel informed HL's counsel that COVID-19 concerns made it imperative that the

13 surveyors not be permitted to come into contact with the crew or enter the enclosed

14 spaces.  Nakazawa Decl. ¶ 35.

15    The Vessel, like all other vessels, has stringent COVID-19 protocols and

16 restrictions.  If a crew member becomes ill from COVID-19 or any other serious

17 illness, it can spread quickly on a vessel because the crew work and live in close

18 proximity in a relatively closed environment.  Further, if a crew member becomes

19 seriously ill while the ship is on the high seas far from land, there is no immediate

20 emergency care available to assist the stricken crew member(s).  Further, a vessel

21 that has a crew member ill with COVID-19 could be denied entry into port resulting

22 in delays to the vessel and significant additional costs.  For these reasons, it is

23 extremely important for the Vessel and her crew to remain isolated from visitors to

24 the fullest extent possible particularly in enclosed spaces and the restriction on

25 access to the crew and enclosed spaces on the ship (e.g. bridge, ship's offices,

26 accommodations, engine room, etc.) is of the utmost importance for the safety of the

27 ship and crew.  *Id.* ¶ 38.

28    Allowing HL's surveyor or technician unfettered access to search, identify

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

**OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY**

1  and preserve ESI on the Load Computer places a substantial burden on the Vessel

2  and crew given COVID-19.  The Load Computer is used regularly by the officers

3  and the officers and crew should not have to be exposed to surveyors and

4  technicians searching their computers when less intrusive means are available to

5  obtain such records and ESI.  Further, the Vessel relies on the Load Computer for its

6  operations and safety.  Having a surveyor or technician manipulating the computer

7  for ESI can interfere and disrupt the programs and/or damage the system.  *Id.* ¶ 39.

8  **III.   HL HAS NOT SHOWN A BASIS FOR AN ORDER GRANTING**

9  **ASSISTANCE UNDER SECTION 1782.**

10      Section 1782 "authorizes, but does not require, federal district courts to assist

11  in the production of evidence for use in a foreign or international tribunal."

12  *Khrapunov v. Prosyankin*, 931 F.3d 922, 923 (9th Cir. 2019), *citing Intel Corp. v.*

13  *Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  "Section 1782's statutory

14  language has been distilled to permit district courts to authorize discovery where three

15  general requirements are satisfied: (1) the person from whom the discovery is sought

16  'resides or is found' in the district of the district court where the application is made;

17  (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and

18  (3) the application is made by a foreign or international tribunal or 'any interested

19  person.'"  *Khrapunov*, 931 F.3d at 925, *quoting* 28 U.S.C. § 1782(a).  "[E]ven where

20  an applicant satisfies § 1782's statutory prerequisites, the district court still retains

21  substantial discretion to permit or deny the requested discovery."  *Id.* at 926.

22      In *Intel*, the Supreme Court identified additional factors "that bear

23  consideration in ruling on a § 1782(a) request": (1) whether the person from whom

24  discovery is sought is a participant in the foreign proceeding; (2) the "nature of the

25  foreign tribunal, the character of the proceedings underway abroad, and the

26  receptivity of the foreign government or the court or agency abroad to U.S. federal-

27  court judicial assistance"; (2) whether the discovery request "conceals an attempt to

28  circumvent foreign proof-gathering restrictions or other policies of a foreign country

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome," in which case it "may be rejected or trimmed." 542 U.S. at 264-65.

**A.  HL has not shown that the Owners are "Found" Within this District for Purposes of Section 1782, or that this Court has Personal Jurisdiction Over the Owners (as Opposed to the Vessel and her Crew).**

HL has identified the bases for this Court's subject matter jurisdiction, but it has not squarely addressed the critical threshold question of whether the Court has personal jurisdiction over the Owners, whose documents and information are sought. *See In re Request for International Judicial Assistance from the Sixteenth Family Court*, 2014 WL 1202545 *1 (N.D. Cal. Mar. 19, 2014) (finding as an initial matter that the Court had personal jurisdiction under Section 1782 over branches of Bank of America with mailing addresses in this District); *see also Astronics Advanced Electronics Systems Corp. v. Lufthansa Technik AG*, 561 Fed.Appx. 605, 606 (9th Cir. 2014) (beginning by examining question of "personal jurisdiction over the parties to adjudicate the § 1782 petition").

It is true that the Vessel and her crew are currently present in San Francisco Bay.  But HL has made no showing that the *Owners* (whose documents and information are sought) reside or are found within this District.  This matters because HL has asked the Court to issue a subpoena to the Master of the Vessel (whom HL does not identify by name), but at least some of the documents and other information that HL is seeking are not aboard the Vessel or otherwise located within this District, but rather are in the possession, custody and control of the Owners, who neither reside nor are "found" in this District.

"Section 1782 does not define 'found.'"  *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019).  In *del Valle Ruiz*, cited by HL, the Second Circuit held that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."  *Id.* at 528.  The Second Circuit also discussed "tag

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

jurisdiction," under *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604 (1990), which it acknowledged "refers to a court's exercise of personal jurisdiction over an individual who is served, and thus 'tagged,' while physically present in the forum."  *Id.* at 526 n. 7.  There were no individual defendants in *del Valle Ruiz*, however, and discovery under Section 1782 was permitted in that case only with respect to a New York-based affiliate based on general personal jurisdiction, not "tag jurisdiction" over any individual.

"Tag jurisdiction" cannot be used to obtain personal jurisdiction over a foreign corporation in this Circuit.  The Ninth Circuit has held that service of process on a corporation's officer within the forum state does not create general personal jurisdiction over the corporation; "*Burnham* does not apply to corporations;" and a court may exercise general personal jurisdiction over a corporation only when its contacts 'render its essentially at home' in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1064 (9th Cir. 2014); *Midcap Funding XVIII Trust v. CSC Logic, Inc.*, 2021 WL 949601 *5 (C.D. Cal. Mar. 12, 2001) ("'tag jurisdiction exists only over natural persons who are physically present in a forum state' and does not apply to corporate entities" *quoting Martinez*).

HL has not cited, and the Owners have not found, any case in which (1) "tag jurisdiction" over an individual temporarily in California was used as a basis for Section 1782 discovery of documents owned by and in the possession of foreign corporations, like the Owners; or (2) discovery of a foreign vessel owner's documents and information were subject to discovery under Section 1782 just because the party seeking discovery "tagged" the master of a vessel during a sporadic port call.

It is settled that there are two categories of personal jurisdiction – specific and general.  *See Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014).  HL cannot demonstrate specific personal jurisdiction, because the event giving rise to the present dispute – "shipping container losses at sea" (*see* Application, p. 1) – did not

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

involve or arise from any in-state activity by the Owners.  HL has not attempted to show a basis for general personal jurisdiction over the Owners either.  Under *Daimler*, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Id.* at 127, *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).   "[T]o 'reside' or be 'found' in a district for purposes of § 1782, a corporate entity must at the very least be subject to the court's general jurisdiction under <u>Daimler</u>."  *In re Sargeant*, 278 F.Supp.3d 814, 821 (S.D.N.Y. 2017) (finding that "failure to satisfy the first statutory prerequisite dooms" a § 1782 application).  Under *Daimler*, "a corporation is typically subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business."  *AM Trust v. UBS AG*, 681 Fed.Appx. 587, 588 (9th Cir. 2017).

HL has made no showing that the Owners have "continuous and systematic" contacts with California.  Chidori is a Japanese corporation.  Nakazawa Decl. ¶ 5; Jessica is a Panamanian corporation.  *Id.* ¶ 6.  The M/V ONE APUS is flagged in Japan.  *Id.* ¶ 7.  HL offers no evidence that Chidori or Jessica is incorporated in California, maintain their principal place of business or have any offices in California, or have other pertinent contacts with California.  Sporadic port calls alone are not a basis for the exercise of general personal jurisdiction.  *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990) (twenty port calls in Louisiana during the time when defendant managed the vessel were insufficient to established personal jurisdiction); *Owens v. Kristen Gerhard Jebsen Skipsrederi A/S*, 2008 WL 4067431 *2 (M.D. Fla. Aug. 27, 2008) ("[a] chartered vessel's port calls, without more, will not subject the vessel's owner to general jurisdiction….").

Finally, even assuming that "tag jurisdiction" may subject the master of the vessel to personal jurisdiction for purposes of Section 1782, HL has sidestepped the

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

**OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY**

question of the extent to which the master should be deemed, under the circumstances of this complex case, to have the authority to produce documents that are (1) owned by Japanese companies – who are not subject to this Court's personal jurisdiction; and/or (2) not aboard the Vessel. As explained below, it appears that HL made a tactical decision not to seek assistance from a Japanese court to get discovery from the Owners while the Vessel was in Japan, and instead has tried to make an end-run around the Japanese courts by "tagging" the master of the Vessel in Oakland, in an attempt to get discovery in Japan in a manner that a Japanese court would not approve. HL has not shown a sound basis for concluding that this Court has personal jurisdiction such that this litigation strategy is appropriate.

**B.** **Even if HL's Application Satisfies the Statutory Requirements of Section 1782, the Pertinent *Intel* Factors Weigh Against Granting HL's Application**

**1.** **The Application Conceals An Attempt To Circumvent Proof-Gathering Restrictions and Policies of a Foreign Country, Specifically Japan.**

As explained above, and in the concurrently-filed Nakazawa Declaration, the Vessel was in Kobe, Japan for three months after the incident in November 2020, but HL did not go to Court in Japan to obtain an order for discovery procedures that apply in that country, and its present Application does not explain why. This is significant for HL's Application in two respects: (1) it undercuts HL's suggestion that there is any genuine urgency for HL to obtain evidence, or any legitimate concern about preserving evidence that might be lost; and (2) it shows that HL is trying to use Section 1782 to evade limitations on discovery in Japan.

The Vessel is flagged in Japan, and Chidori is a Japanese corporation. Japan is not a signatory to the Hague Evidence Convention, because it is fearful of "American-type discovery procedures." *In re Vitamins Antitrust Litigation*, 120 F.Supp.2d 45, 55 (D.D.C. 2000) (finding that there are "inherent conflicts between

COLLIER WALSH NAKAZAWA LLP

One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

1   the Japanese discovery procedures and the Federal Rules").

2       Interests of international comity weigh against allowing HL to use the

3   transitory presence of the Vessel in this District as a predicate for avoiding the need

4   to comply with requirements for discovery from a Japanese corporation, regarding a

5   Japanese-flagged vessel, under Japanese law and procedure.  While the Supreme

6   Court has held that the Hague Evidence Convention is not the sole basis for seeking

7   discovery of evidence in another country, the Court has also recognized that discovery

8   in the international context raises special concerns:

9       "American courts, in supervising pretrial proceedings, should exercise special

10      vigilance to protect foreign litigants from the danger that unnecessary, or

11      unduly burdensome, discovery may place them in a disadvantageous position.

12      Judicial supervision of discovery should always seek to minimize its costs and

13      inconvenience and to prevent improper use of discovery requests.  When it is

14      necessary to seek evidence abroad, however, the district court must supervise

15      pretrial proceedings particularly closely to prevent discovery abuses....

16      Objections to 'abusive' discovery that foreign litigants advance should

17      therefore receive the most careful consideration.  In addition, we have long

18      recognized the demands of comity in suits involving foreign states, either as

19      parties or as sovereigns with a coordinate interest in the litigation.  [Citation.]

20      American courts should therefore take care to demonstrate due respect for any

21      special problem confronted by the foreign litigant on account of its nationality

22      or the location of its operations, and for any sovereign interest express by a

23      foreign state."

24   *Société Nationale Industrielle Aérospatiale v. U.S. District Court,* 482 U.S. 522, 546

25   (1987).

26      Finally, HL has not addressed the question whether a German court could

27   request the assistance of a Japanese court to get the discovery that HL is seeking, once

28   the anticipated foreign proceeding that is the basis for HL's Application commences.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

Case No. 4:20-MC-80107 LB

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

Again, it appears that HL is improperly trying to evade limitations on discovery that might be available to it under the laws of other pertinent countries.

### 2. HL's Application is Unduly Intrusive and Burdensome.

#### a. General Principles.

As stated above, under *Intel* a discovery request that is "unduly intrusive or burdensome … may be rejected or trimmed." 542 U.S. at 264-65. The Court, however, has no obligation to "tailor discovery" to make HL's requests "reasonable"; it was HL's "job to make appropriate requests," and "overbroad requests" can justify denying a Section 1782 application "in full." *Matter of Application of O2CNI Co., Ltd.*, 2013 WL 5826730 *12 (N.D. Cal. Oct. 29, 2013).

Relatedly, "[t]he proper scope of discovery arising out of a § 1782 application is determined by the Federal Rules of Civil Procedure." *Knaggs v. Yahoo! Inc.*, 2016 WL 3916350 *7 (N.D. Cal. July 20, 2016). Section 1782 itself states that "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a) (penultimate sentence); *see also Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012) ("The manner in which discovery proceeds [under a § 1782 Application] will be determined by normal discovery rules."). Hence, HL's application is subject to the requirement that its requests be "proportional," considering factors that include "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Knaggs*, 2016 WL 3916350 *7, *quoting* Fed. R. Civ. Proc. 26(b)(1). "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm, Inc.*, 162 F.Supp.3d 1029, 1043 (N.D. Cal. 2016); *see also Application of O2CNI Co.*, 2013 WL 5826730 *12 ("The court also may consider whether the section 1782 request is a 'fishing expedition' or a vehicle for harassment.").

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

Further, since HL is asking for service of a subpoena on a non-party to litigation, it is subject to the duty imposed by Fed. R. Civ. Proc. 45(d)(1) to "take reasonable steps to avoid imposing undue burden and expense on a person subject to the subpoena." The "court for the district where compliance is required must enforce this duty," including through the imposition of sanctions for failure to comply. *Id.*

> **b.      HL's Request for an Inspection Aboard the Vessel is Unjustified, Intrusive, and Burdensome, and Should be Denied.**

Attachment A to the subpoena to the Master of the Vessel that HL asks the Court to authorize includes the following request for an "Inspection":

> "Inspection: one or more marine surveyors and/or technician(s) may go aboard the Vessel as needed to identify and extract electronically store[d] information and data from the ship's computer systems, including the cargo stowage and lashing computers, route optimization systems, warning data for possible vessel rolling, and systems recording data for vessel motion, acceleration and rolling."

*See* Application, Ex. 1 [Dkt. 1-1], at p. 6 of 7. HL also seeks, in category 9 of "Documents," "Electronically Stored Information or documents related to vessel motions, accelerations, and/or roll angles." *Id.* HL has not identified the surveyors or technicians it proposes to board the Vessel, nor explained their qualifications, nor proposed any of the other usual protocols apply to the inspection that HL seeks. As discussed below, these factors coupled with the breathtakingly broad and vague scope of the inspection HL seeks should lead the Court to deny the request outright.

The scope of a request for electronically stored information and access to computer systems is also subject to principles and limitations on discovery developed by the courts under Fed. R. Civ. Proc. 34. Here, HL's request for unfettered access to the computer systems aboard the Vessel is not justified, is

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

unduly intrusive, and is contrary to established principles about limitations on discovery of another party's computer systems under Rule 34.

Contrary to what HL has requested, "Rule 34(a) does not give the requesting party the right to conduct the actual search." *Moser v. Health Insurance Innovations, Inc.*, 2018 WL 6735710 *5 (S.D. Cal. Dec. 21, 2018), *quoting In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003). "Like the other discovery rules, Rule 34(a) allows the responding party to search his records to produce the required, relevant data." *Id.* "Courts have repeatedly found that Rule 34 does not create a routine right of direct access to an opposing party's electronic information system." The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 127-128 (2018) ("Best Practices"), *citing SEC v. Strauss*, 2009 WL 3459204, *12 n. 8 (S.D.N.Y. Oct. 28, 2009) ("There is a general reluctance to allow a party to access its adversary's *own* database directly."); *see also California Expanded Metal Products Company v. Klein*, 2021 WL 1390356 *3 (W.D. Wash. Mar. 31, 2021) ("Rule 34 does not give the requesting party access to search through all of the responding party's electronic records"); Advisory Committee Notes to the 2006 amendments to Rule 34, subdivision (a) (Rule 34(a) regarding "documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information systems, although such access might be justified in some circumstances," and "[c]ourts should guard against undue intrusiveness resulting from inspection or testing such systems.") "Inspection of an opposing party's computer system under Rule 34 and state equivalents is the exception and not the rule for discovery of ESI." Best Practices, p. 128.

Further, "[d]irect access to an opposing party's computer systems under a Rule 34 inspection also presents possible concerns such as "revealing confidential attorney-client or work-product communications," 'unreasonably disrupting the ongoing business," "endangering the stability of operating systems, software

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

1  applications, and electronic files if certain procedures or software are used

2  inappropriately," and "placing a responding party's computer systems at risk of a

3  data security breach."  Best Practices, pp. 128-129.  As the Sedona Principles

4  explain, "Rule 34 inspections of ESI are likely to be particularly ineffective:

5      "The typical production, in which the responding party identifies and

6      produces responsive information, allows the party with the greatest

7      knowledge of the computer systems to search and utilize the systems to

8      produce responsive information.  A Rule 34 inspection, in contrast, requires

9      persons unfamiliar with the party's recordkeeping systems, hardware, and

10     software to attempt to manipulate the system.  Not only is such a process

11     disruptive, it is less likely to be fruitful."

12  *Id.* at p. 129.

13     Even in the exceptional case when an inspection of another party's computer

14  systems is justified, and the party seeking inspection has shown "that there is no

15  reasonable alternative to an on-site inspection," it must be conducted pursuant to

16  protocols that are completely missing from HL's Application:

17     "Any inspection procedure should: (1) be documented in an agreed-upon

18     (and/or court-ordered) protocol; (2) recognize the rights of non-parties, such

19     as employees, patients, and other entities; and (3) be narrowly restricted to

20     protect confidential and personally identifiable information and system

21     integrity as well as to avoid giving the discovering party access to information

22     unrelated to the litigation.  Further, courts that have allowed access generally

23     have required that the inspection be performed by a qualified consultant or

24     vendor, and that no information obtained through the inspection be produced

25     until the responding party has had a fair opportunity to review that

26     information."

27  Best Practices, P. 129.  HL has not proposed any such protocols.  *See In re Ford*

28  *Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (vacating order that granted

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

1   "unlimited, direct access to Ford's databases," which "established no protocols for

2   the search" and did not "designate search terms to restrict the search").

3        HL's request for a broad and intrusive inspection of the Vessel's computer

4   systems is also improper because it has not shown the Owners' production of

5   information has been inadequate, or that HL's own search of the Vessel's computer

6   could recover deleted relevant materials.  *See In Re Ford Motor Co.*, 345 F.3d at

7   1317 (district court abused its discretion in ordering direct access to opposing

8   party's databases without "a factual finding of some non-compliance with discovery

9   rules").   "Courts have been reluctant to rely on mere skepticism or bare allegations

10  that the responding party has failed to comply with its discovery duties."  *California*

11  *Expanded Metal Products*, 2021 WL 1390356 *3.  Here, HL has not adduced any

12  evidence that anyone "knowingly destroyed or suppressed evidence or that further

13  searching will in fact yield more responsive documents."  *Id.*  Although forensic

14  inspection may be warranted when 'serious questions exist both as to the reliability

15  and the completeness of materials produced,' such a step is an extraordinary remedy

16  that requires substantial support."  *Vasudevan Software, Inc. v. Microstrategy, Inc.*,

17  2013 WL 1366041 * 2 (N.D. Cal. Apr. 3, 2013) (citation omitted).  "As one court

18  noted, '[i]n the absence of a strong showing that the responding party has somehow

19  defaulted in this obligation, the court should not resort to extreme, expensive, or

20  extraordinary means to guarantee compliance.'"  *Id.*, *quoting Powers v. Thomas M.*

21  *Cooley Law Sch.*, 2006 WL 2711512 *5 (W.D. Mich. Sept. 21, 2006).

22        Further, "[a] person may not be compelled to give his testimony or to produce

23  a document or other thing in violation of any applicable privilege," including

24  protection for attorney work product.  *Application of O2CNI*, 2013 WL 5826730

25  *11, *quoting* 28 U.SC. § 1782(a).  But "examination of a hard drive inevitably

26  results in the production of massive amounts of irrelevant, and perhaps privileged,

27  information."  *Powers*, 2006 WL 2711512 *5.  Here, HL's broad request for access

28  to the Vessel's computer information systems potentially involves confidential and

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY

1   privileged information, and the unjustifiably accelerated basis for the discovery HL

2   seeks does not permit time to adequately address these issues.

3       In sum, HL's request is vastly overbroad, and not supported by the kind of

4   evidence that justifies an extraordinary order for inspection of computer systems in

5   the custody of an opposing party's (or a non-litigant subject to a subpoena).  HL's

6   request makes no provision for appropriate protocols or limitations for searches, or

7   measures to address confidentiality or privilege.  HL has not proposed any protocol

8   for allowing the Owners to review data collected before it is provided to HL for

9   potential litigation, including for responsiveness, confidentiality and privilege.  And

10  there are clearly less intrusive ways for HL to get the information it claims it needs.

11  As discussed above, the Owners are working to make a supplemental production of

12  documents and ESI which should satisfy the remaining items on HL's document list.

13           **c.**    **HL's Requested On-Board Inspection of the Vessel**

14                  **Raises Significant COVID-19 Concerns.**

15      HL's request for broad inspection on board the Vessel imposes an

16  unreasonable risk of exposing the crew, who would have to be present, to COVID-

17  19.  In addition to potent for harm or damage to computer system, which Owners

18  rely upon for safe loading and operation of the Vessel, the proposed inspection risks

19  harm to the crew from exposure to COVID-19.  Damage to either the computer

20  systems or the crew would disrupt the Owners' operations and cause enormous costs

21  that clearly outweigh any need HL claims to have for discovery. *See* Nakazawa

22  Decl., ¶¶ 38, 39.

23  //

24  //

25

26

27

28

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

**OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY**

**IV.   CONCLUSION**

　　　For all of the foregoing reasons, the Court should deny HL's Section 1782 application.

Dated:  May 4, 2021               COLLIER WALSH NAKAZAWA LLP


By:　　　/s/ Alan Nakazawa
　　　　Alan Nakazawa
　　　　Attorneys for Chidori Ship Holding LLC,
　　　　and Jessica Ship Holding SA

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

OPPOSITION TO HAPAG-LLOYD'S APPLICATION FOR DISCOVERY