ALAN NAKAZAWA, State Bar No. 84670
alan.nakazawa@cwn-law.com
JOSEPH A. WALSH II, State Bar No. 143694
joe.walsh@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

Attorneys for Chidori Ship Holding LLC
and, Jessica Ship Holding SA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re Application of<br>HAPAG-LLOYD<br>AKTIENGESELLSCHAFT<br><br>Applicant,<br><br>For Order Authorizing Discovery For Use In Foreign Proceedings Under 28 U.S.C. § 1782 | Case No. 4:21-MC-80107 LB<br><br>**DECLARATION OF ALAN NAKAZAWA IN SUPPORT OF OPPOSITION OF CHIDORI SHIP HOLDING LLC AND JESSICA SHIP HOLDING SA TO THE EX PARTE APPLICATION OF HAPAG-LLOYD AKTIENGESELLSCHAFT FOR ORDER AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782** |
|---|---|

I, Alan Nakazawa, declare and state as follows:

1. I am a Partner at Collier Walsh Nakazawa LLP, Attorneys for Chidori Ship Holding LLC ("Chidori") and Jessica Ship Holding SA ("Jessica") (collectively, the "Owners") in the above-captioned discovery matter.

2. I submit this declaration in support of the Owners' opposition to Hapag-Lloyd Aktiengesellschaft's ("HL") Application For Order Authorizing Discovery For Use In Foreign Proceedings pursuant to 28 U.S.C § 1782 (the "Application").

3. I have personal knowledge of the following facts, except those stated

on information and belief, and as to those facts, I believe them to be true.

4.  If called as a witness, I could testify competently thereto.

5.  I am informed and believe that Chidori is a Japanese company and the registered owner of the M/V ONE APUS (the "Vessel"), a large and new Japanese flag containership.

6.  I am informed and believe that Jessica is a Panamanian company and is the bareboat charterer of the Vessel.

7.  I am informed and believe that Jessica time-chartered the Vessel to Nippon Yusen Kaisha, Ltd. ("NYK"), a Japanese vessel operating common carrier, which in turn, time-chartered the Vessel to Ocean Network Express ("ONE"), a Singapore vessel operating common carrier.

8.  I am informed and believe that ONE has a Vessel Sharing Agreement ("VSA") and Cross Slot Charterparty ("CSC") with HL and slot charterers Yang Ming Marine Transport Corporation ("YM") and HMM Co. Ltd. ("HMM"). Under the VSA and CSC, ONE, HL, YM and HMM share space on each other's vessels. In this case, HL had containers on board the Vessel pursuant to its VSA with ONE. *See* Declaration of Crystal Kennedy, ¶¶ 6, 9, and Exhibits 1 and 7.

9.  Under the VSA and CSC between HL and ONE, HL is responsible to handle cargo claims brought by its customers under bills of lading issued by HL. *See* Section 11 of the CSC attached as Exhibit 1 to the Declaration of Crystal Kennedy.

10. According to the Declaration of Crystal Kennedy, ¶ 9, "the Owner must ensure that records related to each voyage are preserved and accessible to slot charterers, and must assist identifying witnesses and obtaining their statements and other evidence that may give rise to a claim against a slot charterer." What the declarant does not tell the court in the declaration is that the "Owner" under the CSC is ONE, the operator of the Vessel, not the Owners of the Vessel (i.e. Chidori and Jessica) from which HL seeks discovery. In other words, it is HL's Alliance Partner

ONE, not Owners, who are to share documents and other evidence with HL and the other slot charterers.

11. I am informed and believe that the casualty occurred during the Vessel's voyage from the Far East to Long Beach in November. As a result of the casualty, the Vessel diverted to Kobe, Japan, where the damaged containers were discharged, the Vessel was inspected, and repairs were undertaken. The Vessel was in Kobe for approximately 3 months during the months of December 2020, January, February and March 2021.

12. I am informed and believe that while the Vessel was in Kobe, HL requested, and was permitted to have its surveyor inspect the on deck cargo spaces.

13. I am informed and believe that while the Vessel was in Kobe for approximately 3 months, HL did not apply to a Japanese court for evidence examination of the Vessel, documents or its computers and equipment.

14. I am informed and believe that the Vessel departed Kobe in March and arrived at Long Beach anchorage on or about April 2, 2021.

15. On March 26, 2021, prior to the Vessel arriving in Long Beach, HL filed an Ex Parte Application for Order Authorizing Discovery for Use in Foreign Proceedings Under 28 U.S.C. §1782 in the United States District Court for the Central District of California (Case No.: 8:21-mc-00015). A true and correct copy of HL's Application filed in the Central District (the "Central District Application") is attached hereto as Exhibit "A." No notice of the Application was provided to the Owners prior to the filing.

16. HL's Central District Application was overbroad and all-encompassing. It sought more than 130 categories of records, including electronically stored information ("ESI") to be produced by April 6, 2021. It included inspecting "as needed" several distinct areas of the Vessel and authorization for their surveyor to copy all relevant information and data on the Vessel. It further sought an order authorizing HL's counsel and/or surveyor to remain on board to expedite the

1  compliance of the order and subpoenas. It sought the depositions of the foreign
2  Master and Chief Officer on expedited notice.  I am informed and believe that the
3  Master and Chief Officer presently on board the Vessel were not on board the
4  Vessel at the time of the incident in November and therefore were not percipient
5  witnesses.

6        17.    Not surprisingly, Magistrate Judge John Early, upon reviewing HL's
7  Central District Application and before any opposition was filed by Owners,
8  recommended to the District Judge in his Report and Recommendation of United
9  States Magistrate Judge filed April 2, 2021, that "the Court deny the Motion in the
10 lawful exercise of its discretion on the unique facts here." *See* p. 4 of the Report and
11 Recommendation of United States Magistrate Judge attached hereto as Exhibit "B."

12       18.    Magistrate Judge Early did not decide whether HL had met the
13 statutory requirements of Section 1782.  *See* p. 4, Exhibit "B."

14       19.    In discussing the fourth Intel factor, Magistrate Judge Early concluded
15 that the "discovery sought here is unduly burdensome and intrusive, and the factor
16 weighs heavy against granting the Motion [citation omitted]." *See* p. 8 of the Report
17 and Recommendation.

18       20.    According to Magistrate Judge Early:

> Lastly, as to the fourth factor, the Court finds that it weighs heavily against granting the Motion. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." In re Ex Parte Application of Qualcomm Inc., 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). Here, the scope and breadth of the discovery sought by Movant, all to be conducted within roughly a week's time from the arrival of the Vessel, results in an undue burden upon the proposed deponents and the Vessel's owners and operators. The scope of the document subpoena is of virtually unfettered breadth, covering more than 130 categories of records, with compliance to be completed by April 6, 2021—four business days after the arrival of the Vessel in a foreign port. Similarly, the demand for an on-board inspection of the Vessel's cargo areas, bridge, wheelhouse, office, control

room, engine room, engine control room, with downloads of ESI from data recorders, cargo computer programs, Vessel stability logs, weather routing systems, and all systems and related equipment and machinery relating to navigation, planning, propulsion, and auxiliary, facially imposes a substantial burden. Further, Movant's request that the Court direct that Movant's counsel, surveyor, or expert be permitted to "remain on board the Vessel to expedite the compliance with the Court's order" is highly intrusive. Finally, the deposition subpoenas directed to the Vessel's officers who, if they indeed are in this District, would have just arrived from a lengthy period at sea, without a showing that such officers have relevant information, calling for depositions that, for some or all of them, may be in a foreign country, involving a foreign court system, and possibly a foreign language, on three or four business days' notice during a global pandemic, is highly burdensome. Rule 45(d) of the Federal Rules of Civil Procedure directs that a party serving a Rule 45 subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and directs that district courts "must enforce this duty." See Fed. R. Civ. P. 45(d)(1). Further, considering the extremely short notice period and the potential for language and other difficulties in consulting with and retaining counsel, an argument that the subpoenaed parties have recourse to filing a motion to quash the subpoenas is of little practical benefit here. The discovery sought here is unduly burdensome and intrusive and the factor weighs heavily against granting the Motion. See In re Fagan, 2019 WL 8011742, at *3 (C.D. Cal. May 10, 2019); In re Sargeant, 278 F. Supp. 3d at 823.

The fourth factor weighs heavily in favor of denying the Motion. In fact, the fourth factor, in the unique circumstances at issue here, weighs so heavily against granting the relief sought, it outweighs the other three factors, which at best marginally favor granting relief. Considering all the circumstances here, the Court should exercise its discretion to deny the Motion.

.

21.    At a hearing held on April 9, Magistrate Judge Early encouraged the parties to try to reach an agreement on the discovery so that the court would not have to rule on HL's application for leave to file an amended application and HL's amended application.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300

22. On behalf of the Owners, I had several discussions with Mr. Lempiere, counsel for HL, and counsel for the other slot charterers HMM and YM, who had also filed their own discovery applications/petitions with the court in the Central District. Counsel cooperated in reaching an agreement to narrow the scope of the discovery sought by HL and the other slot charterers and entered into a Discovery Agreement. *See* Discovery Agreement attached hereto as Exhibit "C."

23. As a result of the parties reaching the Discovery Agreement, Magistrate Judge Early withdrew his Report and Recommendation and denied HL's ex parte application to file an Amended Application as moot.

24. Although HL reduced the number of categories of documents in the Discovery Agreement from over 130 categories to 28 categories, some of the 28 categories are still overly broad and intrusive. Recognizing this in the Discovery Agreement, the Owners and HL agreed "to use their best efforts to narrow the scope of such requests to the relevant time periods and their best efforts to resolve any objections asserted by Owners to the documents requested by Applicants."

25. The Owners have not withheld documents and ESI, and HL's claim to the contrary is misleading. The Owners have responded reasonably and diligently in producing the requested documents to HL and the other slot charterers. This has been recognized by Mr. Lempiere in our telephone calls and in his correspondence.

26. For example, Mr. Lempiere's April 21st email to me states:

"We appreciate that owners provided substantial relevant materials as agreed upon in the Discovery Agreement." A true and correct copy of Mr. Lempiere's April 21, 2021, email is attached hereto as Exhibit "D."

27. As of May 3, Owners have produced more than 3,700 pages of documents plus substantial ESI,, including ESI from the Vessel's Voyage Data Recorder ("VCR") and various computer systems. The VCR is a data recording system that collects data from various sensors on board the ship concerning position, movement, physical status, command and control of the Vessel. It is similar to the

"black box" on an aircraft. I am informed and believe the documents/data exceeds 49 GB.

28. While there are a few categories of documents to still address, Owners have reasonably complied with HL's document requests.

29. After completing its cargo operations, the Vessel departed Long Beach on April 17 for Oakland. The Vessel did not flee the Central District. All parties and counsel were aware that the Vessel had containers to discharge in Oakland and would be proceeding there.

30. I continue to work with HL's counsel, Mr. Lempiere, in trying to respond to the remaining requests. I have sought clarification on some of the requests which Mr. Lempiere has provided. We continue to work together to try to narrow the scope of the requests so as to reduce the burden on Owners. I have known Mr. Lempiere for many years and have worked with him on various cases. I believe that we will be able to reach an agreement on any remaining discovery issues.

31. Based on HL's new application to this court, there are 9 remaining categories of documents and ESI that HL asserts Owners have not adequately responded to. Owners have produced a substantial volume of documents and ESI in response to these remaining categories. Some of the categories such as the request asking for "all data" files from the Loading Computer for departure Yantian are still too broad and intrusive but Owners are endeavoring to collect additional data from the Loading Computer and produce it to HL.

32. Owners are addressing HL's modified list of documents attached to its Application and will be supplementing their response with additional documents and ESI by Wednesday, May 5, 2021. Owners' supplemental response should satisfy the remaining items on HL's document list.

33. HL's counsel has indicated to me that HL prefers to resolve the remaining documents issues informally without the need for the court's intervention.

Owners too prefer this approach and will continue to work with HL to resolve the remaining issues.

34. I believe that with the supplemental production which is planned to occur on Wednesday, the parties will be in agreement that there are no remaining discovery issues relating to documents that need to be resolved in this court.

35. Contrary to the assertion made by HL in footnote 2 on page 9, and in Mr. Lempiere's declaration in ¶ 8, Owners did not avoid allowing HL's surveyor to go in the enclosed spaces of the Vessel (e.g. bridge, deck offices, engine room and accommodations) by asserting it was not unnecessary because Owners would provide the documents subject to the agreement narrowing the scope of discovery sought. Owners did not want any third party to enter the enclosed spaces of the Vessel to avoid contact with the crew because of COVID-19 concerns. *See* Lempiere declaration, ¶ 3. Owners also wanted to prevent a "fishing expedition" by HL and its surveyors. I informed HL's counsel that COVID-19 concerns made it imperative that the surveyors not be permitted to come into contact with the crew or enter the enclosed spaces.

36. Owners have not admitted that the court in the Central District had jurisdiction over it. In fact, one of the grounds Owners opposed YM's Petition for Discovery in the Central District was that YM had failed to prove tht the Owners are "found" within the District for purposes of Section 1782. *See* Opposition of Chidori Ship Holding LLC and Jessica Ship Holding SA to Applicant Yang Ming Marine Transport Corp.'s Petition for Order Authorizing Discovery Pursuant to FRCP, Rule 27 and 28 U.S.C. § 1782 attached hereto as Exhibit "E."

37. HL's Application requests that its surveyor be allowed to go aboard to make sure that evidence is identified, gathered and preserved before it is lost forever.

38. There has been no showing by HL that the documents and ESI is at risk of being destroyed or lost. I am informed and believe that the documents and

ESI are being preserved by Owners and are not endangered of being destroyed or lost.

39. I am informed that the Vessel, like all other vessels, has stringent COVID-19 protocols and restrictions. If a crew member becomes ill from COVID-19 or any other serious illness, it can spread quickly on a vessel because the crew work and live in close proximity in a relatively closed environment. Further, if a crew member becomes seriously ill while the ship is on the high seas far from land, there is no immediate emergency care available to assist the stricken crew member(s). Further, a vessel that has a crew member ill with COVID-19 could be denied entry into port resulting in delays to the vessel and significant additional costs. For these reasons, it is extremely important for the Vessel and her crew to remain isolated from visitors to the fullest extent possible particularly in enclosed spaces and the restriction on access to the crew and enclosed spaces on the ship (e.g. bridge, ship's offices, accommodations, engine room, etc.) is of the utmost importance for the safety of the ship and crew.

40. Allowing HL's surveyor or technician unfettered access to search, identify and preserve ESI on the Loading Computer places a substantial burden on the Vessel and crew given COVID-19. The Loading Computer is used regularly by the officers and the officers and crew should not have to be exposed to surveyors and technicians searching their computers when less intrusive means are available to obtain such records and ESI. Further, the Vessel relies on the Loading Computer for its operations and safety. Having a surveyor or technician manipulating the computer for ESI can interfere and disrupt the programs and/or damage the system.

41. Further, allowing a surveyor or technician to access the computer system on board the ship could compromise privileged documents and ESI.

42. The court should not permit HL to conduct a "fishing expedition" on board the Vessel.

DECLARATION OF ALAN NAKAZAWA

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed May 4, 2021, at Long Beach, California.

_____

Alan Nakazawa

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 1860
Long Beach, California 90831
Telephone (562) 317-3300