EXHIBIT "A"

**Philip Lempriere**, CASB # 143613
Email: plempriere@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711
Facsimile: 206.292.0460
*Attorneys for Applicant,*
*Hapag-Lloyd Aktiengesellschaft*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| In re Application of | Case No.: 8:21-mc-00015 |
| HAPAG-LLOYD AKTIENGESELLSCHAFT | EX PARTE APPLICATION FOR ORDER AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782 |
| Applicant, | |
| For Order Authorizing Discovery For Use In Foreign Proceedings Under 28 U.S.C. § 1782 | [Filed Concurrently With Declaration of Crystal Kennedy; and Proposed Order] |

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................3

        A.      Parties and Agreements for Foreign Proceedings............................3

        B.      The Incident..........................................................................................6

        C.      Jurisdiction and Venue ......................................................................9

III.    ARGUMENT ......................................................................................................9

        A.      HL's Application Meets the Statutory Requirements for § 1782
                Discovery ..............................................................................................9

        B.      The § 1782 Discretionary Factors all Weigh in Favor of Granting
                HL's Application...............................................................................11

IV.     CONCLUSION ................................................................................................15

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,
    793 F.3d 1108 (9th Cir. 2015) ................................................................ 1, 11

*In re Application of Winning (HK) Shipping Co., Ltd.*,
    No. 09-22659-MC, 2010 U.S. Dist. LEXIS 54290, 2010 WL
    1796579 (S.D. Fla. Apr. 30, 2010) .......................................................... 2

*In re Application Pursuant to 28 U.S.C. 1782 for an Order*
    *Permitting Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ...................................................... 10, 13, 15

*In re Application to take Discovery of Kane for Use in Foreign*
    *Proceeding*, No. 2:21-MC-00159-SB, (PDx), 2021 U.S. Dist.
    LEXIS 35859, at *5 (C.D. Cal. Feb. 24, 2021) ........................................ 10

*In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS*
    *Forwarding, (USA) Inc.*,
    747 F.3d 1262, 1270 (11th Cir. 2014) ...................................................... 10

*In re Dubey*,
    949 F. Supp. 2d 990 (C.D. Cal. 2013) .......................................... 2, 10, 11

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ...................................................................... 12

*Fed. Ins. Co. v. UPS Ocean Freight Servs.*,
    No. CV 16-9305-DMG (Ex), 2017 U.S. Dist. LEXIS 224203
    (C.D. Cal. Dec. 8, 2017) .............................................................................. 4

*In re Golden Root Invs. Pte*,
    No. EDMC 19-11, JGB (KKx), 2019 U.S. Dist. LEXIS 227805,
    at *4–5 (C.D. Cal. Sep. 6, 2019 .................................................................. 2

*In re Gov't of the Lao People's Democratic Republic*,
    No. 1:15-MC-00018, 2016 U.S. Dist. LEXIS 47998 (D. N.
    Mar. I. Apr. 7, 2016) .................................................................................. 2

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

*In re Grupo Unidos Por El Canal S.A.*,
    No. 14-mc-80277-JST (DMR), 2015 U.S. Dist. LEXIS 52358
    (N.D. Cal. Apr. 21, 2015) ............................................................................ 2

*Gushlak v. Gushlak*,
    Nos. 11-2584-cv, 11-3808-cv, 2012 U.S. App. LEXIS 13535
    (2d Cir. July 3, 2012) ................................................................................... 1

*Haluapo v. Akashi Kaiun, K.K.*,
    748 F.2d 1363 (9th Cir. 1984) ..................................................................... 4

*Hartford Ins. Co. v. Hapag-Lloyd Container Line GmBH*,
    No. 02-22154-CIV-GOLD/SIMONTON, 2003 U.S. Dist.
    LEXIS 18461 (S.D. Fla. Apr. 28, 2003) ...................................................... 5

*Heraeus Kulzer, GmbH v. Biomet, Inc. (Heraeus)*,
    633 F.3d 591 (7th Cir. 2011) ..................................................................... 13

*HRC-Hainan Holding Co., LLC v. Yihan Hu* (*In re HRC-Hainan
    Holding Co., LLC*),
    No. 20-15371, 2020 U.S. App. LEXIS 33250 (9th Cir. Oct. 21,
    2020) ..................................................................................................... 2, 3

*Husayn v. Mitchell*,
    938 F.3d 1123 (9th Cir. 2019) ..................................................................... 1

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)............................................................................. *passim*

*In re Joint Stock Co. Raiffeinsenbank*,
    No. 16-mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090, at *19
    (N.D. Cal. Nov. 2, 2016) ........................................................................... 13

*In re Kleimar NV*,
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) ......................................................... 3

*In re Letters Rogatory from Tokyo Dist.*,
    539 F.2d 1216 (9th Cir. 1976) ..................................................................... 1

*Mak v. For the Issuance of Discovery in ex rel. Foreign
    Proceeding Pursuant to 28 U.S.C. 1782*,
    2012 U.S. Dist. LEXIS 98577, 2012 WL 2906761 (N.D. Cal.
    July 16, 2012) ........................................................................................... 13

iii

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ......................................................................... 14

*Meritz Fire & Marine Ins. Co. v. Hapag-Lloyd*,
   No. CV 09-3242 PSG, 2009 U.S. Dist. LEXIS 88020 (C.D.
   Cal. Sep. 2, 2009) ........................................................................................ 4

*MetaLab Design, Ltd. v. Zozi Int'l, Inc.*,
   No. 17-mc 80153-MEJ, 2018 U.S. Dist. LEXIS 5448 (N.D.
   Cal. Jan. 11, 2018) ...................................................................................... 14

*In re Owl Shipping, LLC*,
   Civil Action No. 14-5655 (AET)(DEA), 2014 U.S. Dist. LEXIS
   148088 (D.N.J. Oct. 17, 2014) ............................................................... 3, 13

*In re Pinchuk*,
   No. 13-22857-MC-GOODMAN, 2013 U.S. Dist. LEXIS
   147864 (S.D. Fla. Sep. 20, 2013) ................................................................ 2

*Servotronics, Inc. v. Rolls-Royce PLC*,
   975 F.3d 689 (7th Cir. 2020), *cert. granted*, No. 20-794, 2021
   U.S. LEXIS 1592 (Mar. 22, 2021) ........................................................... 2, 3

*Siemens AG v. W. Dig. Corp.*,
   No. 8:13-cv-01407-CAS-(AJWx), 2013 U.S. Dist. LEXIS
   159266 (C.D. Cal. Nov. 4, 2013) ............................................................... 12

*United States v. Sealed 1*,
   235 F.3d 1200 (9th Cir. 2000) .................................................................... 11

*Walker v. Braus*,
   995 F.2d 77 (5th Cir. 1993) .......................................................................... 4

**Statutes**

28 U.S.C. § 1333 .............................................................................................. 9

28 U.S.C. § 1782 .................................................................................... *passim*

46 U.S.C. § 30701 ............................................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 9(h) ............................................................................ 9

Fed. R. Civ. P. 26(b)(1) ............................................................. 14, 15

Fed. R. Civ. P. 34(a) ............................................................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Hapag-Lloyd Aktiengesellschaft ("HL") respectfully requests an order allowing discovery for use in foreign proceedings pursuant to 28 U.S.C. § 1782. Section 1782 authorizes a district court to order a person "who resides or is found" in the district to provide discovery "for use in a proceeding in a foreign or international tribunal," upon "application by any interested person." Ex parte consideration is proper because applications for § 1782 discovery are typically considered ex parte since parties will have adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery. *See In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that "Letters Rogatory are customarily received and appropriate action taken with respect thereto ex parte. The witnesses can and have raised objections and exercised their due process rights by motions to quash the subpoenas."); *see also Husayn v. Mitchell*, 938 F.3d 1123, 1126, 1138 (9th Cir. 2019) (reversing and remanding an Eastern District of Washington order quashing § 1782 subpoenas originally granted ex parte); *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1109–10 (9th Cir. 2015) (affirming ex parte grant of § 1782 application); *Gushlak v. Gushlak*, Nos. 11-2584-cv, 11-3808-cv, 2012 U.S. App. LEXIS 13535, at *3 (2d Cir. July 3, 2012) ("it is neither uncommon nor improper for district courts to grant application made pursuant to § 1782 ex parte"). Section 1782 relief is available when certain statutory requirements are met and discretionary factors weigh in favor of granting the application. *See generally Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). HL meets the requirements.

The containership M/V ONE APUS was en route from Yantian, China to Long Beach, California when something went wrong and the ship lost at least eight hundred forty-three (843) containers overboard. A recent article described

1

the incident as "one of the worst container losses at sea ever recorded." The Maritime Executive, *ONE Apus Containership Returns to Sea After Three Month Recovery* (Mar. 16, 2021, 10:40AM) https://www.maritime-executive.com/article/one-apus-containership-returns-to-sea-after-three-month-recovery. Hundreds more containers suffered damage without falling off the ship. HL does not own the vessel, but as slot charterer it was allotted the use of certain container slots onboard. Three other shipping companies—Hyundai Merchant Marine Co., Ltd. ("Hyundai"), Ocean Network Express Pte. Ltd. ("ONE"), and several affiliated entities of Yang Ming Marine Transport Corp. ("Yang Ming") (HL, Hyundai, ONE, and Yang Ming are collectively the "THE Alliance")—also book space on vessels provided or chartered by members of THE Alliance.

HL issued bills of lading to cargo owners for transport of their cargo and has obligations to them pursuant to the terms of the bills of lading and under the U.S. Carriage of Goods by Sea Act, 46 U.S.C. § 30701, note ("COGSA"). As HL's bills of lading mandate, HL will need to defend litigation in the courts of Hamburg, Germany[1] for claims related to the lost or damaged cargo. Information

---

[1] As discussed in more detail below, the German court venue is mandatory for claims against HL by most of its cargo customers. Certain claims between HL and other members of THE Alliance are subject to arbitration in London, England. The United States Supreme Court will consider whether U.S. law allows federal courts to order § 1782 discovery for private commercial arbitration abroad in *Servotronics, Inc. v. Rolls-Royce PLC*, 975 F.3d 689, 696 (7th Cir. 2020), *cert. granted*, No. 20-794, 2021 U.S. LEXIS 1592, at *1 (Mar. 22, 2021). The same question was pending in the Ninth Circuit Court of Appeals before the Supreme Court granted certiorari in *Servotronics. See HRC-Hainan Holding Co., LLC v. Yihan Hu* (*In re HRC-Hainan Holding Co., LLC*), No. 20-15371, 2020 U.S. App. LEXIS 33250, at *1–2 (9th Cir. Oct. 21, 2020), currently held in abeyance pending the Supreme Court's disposition in *Servotronics*. Other than the underlying district court decision in *HRC-Hainan*, No. 19-mc-80277-TSH, 2020 U.S. Dist. LEXIS 32125, at *1 (N.D. Cal. Feb. 25, 2020), district courts within the Ninth Circuit have ruled that § 1782 cannot be used in aid of foreign private arbitration. *See In re Dubey*, 949 F. Supp. 2d 990 (C.D. Cal. 2013); *In re Golden Root Invs. Pte*, No. EDMC 19-11 JGB (KKx), 2019 U.S. Dist. LEXIS 227805, at *4–5 (C.D. Cal. Sep. 6, 2019); *In re Gov't of the Lao People's Democratic Republic*, No. 1:15-MC-00018, 2016 U.S. Dist. LEXIS 47998, at *32–33 (D. N. Mar. I. Apr. 7, 2016); *In re Grupo Unidos Por El Canal S.A.*, No. 14-mc-80277-JST (DMR), 2015 U.S. Dist. LEXIS 52358, at *36 (N.D. Cal. Apr. 21, 2015). Other courts have ruled that London arbitration proceedings are within § 1782's scope. *See In re Pinchuk*, No. 13-22857-MC-GOODMAN, 2013 U.S. Dist. LEXIS 147864, at *6 (S.D. Fla. Sep. 20, 2013) (citing *In re Application of Winning (HK) Shipping Co., Ltd.*, No.

2

about the vessel's operation and navigation during the voyage are of paramount importance to whether the vessel was and is seaworthy and HL's defenses related to cargo claims. Depositions of the vessel's officers are necessary to collect and preserve crucial evidence about the voyage. However, owners of the Japanese-flagged vessel have refused HL's requests to investigate the incident. The vessel and its crew will be in Long Beach only briefly, after which HL may forever lose the opportunity to gather documents and depose the crew because once crew members sign off, there is a good chance that they will not return to the ship. HL thus seeks an order for depositions and the production of documents and things as specified in the attached subpoenas.

## II.    **STATEMENT OF FACTS**

### A.    **Parties and Agreements for Foreign Proceedings**

The M/V ONE APUS (the "Vessel"), is a Japanese-flagged containership bearing IMO Number 9806079. Upon information and belief, the Vessel is: (1) owned by Chidori Ship Holding LLC, a Japanese limited liability company ("Chidori"); (2) bareboat chartered to Jessica Ship Holding S.A., a Panamanian limited liability company ("Jessica"); (3) time chartered to an NYK Line-affiliate, a Japanese company; and (4) sub-time chartered by ONE, a Singaporean limited liability company. Declaration of Crystal Kennedy in Support of Application for Order Under 28 U.S.C. § 1782 ("Kennedy Dec."), ¶ 5. NYK Ship Management Pte., Ltd., a Singaporean company, manages the Vessel. *Id.* As owner *pro hac vice* and manager, respectively, Jessica and NYK had operational control over the day-to-day

---

09-22659-MC, 2010 U.S. Dist. LEXIS 54290, 2010 WL 1796579, at *6–7 (S.D. Fla. Apr. 30, 2010)); *In re Kleimar NV*, 220 F. Supp. 3d 517 (S.D.N.Y. 2016) (the LMAA is a foreign tribunal within the meaning of § 1782); *In re Owl Shipping, LLC*, Civil Action No. 14-5655 (AET)(DEA), 2014 U.S. Dist. LEXIS 148088, at *3 (D.N.J. Oct. 17, 2014). Regardless of the outcome in *Servotronics* or *HRC-Hainan*, § 1782 discovery is appropriate here for use in the inevitable German judicial proceedings.

3

management and navigation of the Vessel, and employed the crew. *See Haluapo v. Akashi Kaiun, K.K.*, 748 F.2d 1363, 1364 (9th Cir. 1984); *Walker v. Braus*, 995 F.2d 77, 80–81 (5th Cir. 1993) (in time charter situation, vessel owner maintains possession and control of the vessel).

ONE, HL, Hyundai, and Yang Ming entered into a Vessel Sharing Agreement ("VSA") as members of THE Alliance. Kennedy Dec., ¶ 6, Ex. 1. Pursuant to the VSA, the companies sold cargo space on vessels owned or chartered by members of THE Alliance. *Id.* In other words, the members shared space on each other's vessels. *Id.* Members of THE Alliance that do not own or charter the ships on which they sold cargo space are referred to as "slot charterers." *Id.*

Every shipment booked with HL is governed by a bill of lading that incorporates HL's standard terms and conditions. Kennedy Dec., ¶ 7, Ex. 2. Paragraph 25 of HL's bill of lading provides that any claim or dispute arising under the bill of lading "shall be determined in the Hamburg courts to the exclusion of the jurisdiction of the courts of any other place." *Id.* The mandatory forum in Hamburg is triggered because one hundred fifty-seven (157) of the lost containers, and another eighty-eight (88) containers onboard and but damaged, shipped under HL bills of lading. Kennedy Dec., ¶ 7, Exs. 4, 5.

HL's German forum selection clause has been upheld and enforced by this Court and other district courts. *See e.g.*, *Fed. Ins. Co. v. UPS Ocean Freight Servs.*, No. CV 16-9305-DMG (Ex), 2017 U.S. Dist. LEXIS 224203, at *7 (C.D. Cal. Dec. 8, 2017) (enforcing HL's German forum selection clause and granting its motion to dismiss for improper venue); *Meritz Fire & Marine Ins. Co. v. Hapag-Lloyd*, No. CV 09-3242 PSG (PLAx), 2009 U.S. Dist. LEXIS 88020, at *11 (C.D. Cal. Sep. 2, 2009) (finding HL's forum

selection clause reasonable and binding on non-parties to HL's bill of lading); *Hartford Ins. Co. v. Hapag-Lloyd Container Line GmBH*, No. 02-22154-CIV-GOLD/SIMONTON, 2003 U.S. Dist. LEXIS 18461, at *24 (S.D. Fla. Apr. 28, 2003) (ruling that HL's German forum selection clause is mandatory and exclusive). HL has also secured a federal district court order granting § 1782 discovery under substantially similar circumstances. *See* Kennedy Dec., ¶ 8, Ex. 6.

HL, along with other members of THE Alliance, is also a party to an agreement called a Cross Slot Charterparty (the "CSC"), under which each party is provided slots (cargo space) onboard vessels owned or chartered by another party. Kennedy Dec., ¶ 9, Ex. 7. Under the CSC, whichever company charters a vessel is considered the Owner with potential indemnity obligations to the other parties for certain claims regarding cargo or containers. *Id*. Under Section 8 of the CSC, the Owner must ensure that records related to each voyage are preserved and accessible to the slot charterers, and must assist in identifying witnesses and obtaining their statements and other evidence that may give rise to a claim against a slot charterer. *Id*.

As mentioned above, the German court forum is mandatory for claims against HL from most of its cargo customers, some of whom have already demanded information regarding their cargo, the nature and circumstances of the loss, and preservation of evidence relating to the casualty. *Id*. Thus far, HL's cargo customers have provided notice of intent to pursue claims against HL for their losses in connection with 49 of the lost or damaged containers, and HL expects eventual claims for all lost and damaged cargo. *Id*., ¶ 7, Ex. 3.

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

### B. <u>The Incident</u>

On or around November 30, 2020, the Vessel was en route from Yantian, China to Long Beach, California when something went wrong. Kennedy Dec., ¶ 10, Ex. 8. The Vessel reportedly rolled heavily and lost at least eight hundred forty-three (843) containers overboard, with hundreds of other containers damaged onboard. *Id.*; *see also id.*, ¶ 7, Exs. 4, 5 (showing containers confirmed to be lost as of February 3, 2021, and containers confirmed to be damaged as of March 5, 2021). Damaged containers were discharged, transloaded, and restowed in Japan for onward carriage to Long Beach. *Id.*, ¶ 10. The full extent of cargo loss and damage has yet to be determined. *Id.*



HL has already received claims from dozens of cargo shippers, owners, consignees, and their insurers for the lost and damaged cargo. *Id.*, ¶ 11. HL expects to receive dozens more claims in the coming months. *Id.* Accordingly, HL expects litigation in Hamburg, Germany. *Id.* Documents

6

and information from the Vessel related to the voyage and stowage of the containers are key to allow HL to defend the numerous claims for cargo loss or damage. *Id*. Yet, the Vessel owners have repeatedly refused HL's requests to thoroughly investigate the incident and preserve critical evidence, including by denying access to the Vessel to examine lashing gear and related deck fittings and other securing devices likely to have failed. *Id*.

During the more than three months that the Vessel was docked in Kobe, Japan, its owners blocked HL from doing anything more than a brief, superficial walk though in limited parts of the ship and observing the container operations from a considerable distance in a small area marked on the dock. *Id*., ¶ 12. HL has repeatedly asked the vessel owners to allow a more thorough on-board investigation, but have been refused. *Id*. HL has made requests by email and telephone without receiving responses. *Id*. When the owners have responded, they have asked HL to give up and rely on ONE for information and documents. *Id*., ¶ 12, Ex. 9 (messages from HL seeking access to the Vessel and the owner's denials of access).

Moreover, some relevant lashing equipment was removed from the Vessel during the transloading operations in Kobe, and HL was not allowed to photograph or view the equipment up close in any way. *Id*., ¶ 13. HL is reasonably concerned that further delay of inspection will result in more evidence being lost forever. *Id.*, ¶ 13, Ex. 10 (messages from HL to ONE— under the VSA, the "owner" in relation to other members of THE Alliance— seeking access to the Vessel and ONE's denials of access).

HL expects the Vessel to arrive at the Port of Long Beach on or around Wednesday, March 31, 2021. *Id*., ¶ 14. While the ship's schedule is subject to change, it is expected to lay at anchor for approximately one week before proceeding to berth at the Port of Long Beach for a few days for cargo

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

operations. *Id*. Once the ship and crew leave Long Beach, HL may forever lose the opportunity to depose its crew and examine evidence necessary in the German tribunal. *Id*. As set forth in the subpoenas attached as Exhibits A-E, HL seeks discovery from the Vessel's master, chief officer, officer of the watch when the containers were lost or damaged, chief engineer, and second engineer, as necessary to collect and preserve evidence for use in the inevitable foreign actions. *Id*. Even if the crew members who were aboard the ship at the time of the casualty have left the Vessel by the time it arrives in Long Beach, HL will need to depose some of the current crew members. *Id*. They can explain how various ship systems work and what the ship's records reveal about the cargo stowage and lashing conditions, the ship's stability, and similar issues on the casualty voyage. *Id*.

HL also needs to have a marine surveyor and potentially other experts knowledgeable regarding marine electronic equipment attend on board the vessel to inspect the conditions and obtain relevant data and information relating to the casualty. *Id*. The surveyor would inspect the area on deck and below deck where cargo was lost and damaged, the ship's bridge (or wheelhouse) from which the ship's officers navigated the Vessel, the ship's office and/or cargo control room, and the engine room. *Id*. Other experts would inspect and possibly extract data from the ship's electronic equipment, such as Electronic Chart Display Information Systems ("ECDIS"), Voyage Data Recorders ("VDR"), cargo and cargo lashing-related computer programs, vessel stability computer programs, weather routing systems, and potentially other ship's systems that relate to navigation, voyage planning, and the ship's propulsion, auxiliary and related equipment and machinery. *Id*.; *see also* Fed. R. Civ. P. 34(a) (permitting entry onto a party's property to inspect and copy documents and electronically stored information).

8

HL will conduct the discovery and depositions in cooperation with opposing counsel and in a manner that minimizes disruption to the Vessel's crew and operations. HL will send copies of the Court's Order and the subpoenas to the Vessel owner's lawyers who have already been appointed in London and in Asia. HL will also arrange to serve the Order and subpoenas on the vessel owner's local counsel once appointed.

### C. <u>Jurisdiction and Venue</u>

This matter is within the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h). Jurisdiction is also proper pursuant to 28 U.S.C. § 1782, as this application for discovery involves persons, documents and property that are or will shortly be located within this district. Venue in this district is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is being sought from the Vessel which is expected to arrive at the Port of Long Beach on or around Wednesday, March 31, 2021, and to depart soon after completing cargo operations.

## III. <u>ARGUMENT</u>

The framework for granting an application for § 1782 discovery, as set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256–65 (2004), involves both statutory requirements and discretionary factors for consideration. Here, HL meets all the statutory requirements and the discretionary factors all weigh in favor of granting HL's application.

### A. <u>HL's Application Meets the Statutory Requirements for § 1782 Discovery</u>

An applicant under § 1782 must satisfy the following statutory prerequisites: "(1) the application is made by a foreign or international tribunal or 'any interested person'; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the person or entity from whom the discovery is sought is a resident of or found in the district in which the application

9

is filed." *In re Dubey*, 949 F. Supp. 2d 990, 992 (C.D. Cal. 2013) (quoting *In re Application Pursuant to 28 U.S.C. 1782 for an Order Permitting Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998)); *see also* 28 U.S.C. § 1782(a).

First, HL is an "interested person" in the foreign proceedings. The U.S. Supreme Court has acknowledged that the term "interested person" should be interpreted broadly and includes both litigants as well as other parties who possess a reasonable interest in obtaining judicial assistance. *Intel*, 542 U.S. at 256–57. HL is a party to the bills of lading under which cargo interests will claim against HL Germany courts. Under the circumstances, HL is indisputably an "interested person" within the meaning of § 1782.

Second, HL seeks the discovery for use in a proceeding in a foreign or international tribunal. The foreign proceeding for which a court may authorize discovery need not be "pending or imminent." *Intel*, 542 U.S. at 259. The statute only requires that foreign proceedings "be within reasonable contemplation." *Id*. Although "[t]he future proceedings must be more than speculative," it suffices that the district court has sufficient indication that a foreign proceeding "would eventuate in which the evidence gathered can be weighed impartially." *See In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA) Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014); *see also In re Application to take Discovery of Kane for Use in Foreign Proceeding*, No. 2:21-MC-00159-SB (PDx), 2021 U.S. Dist. LEXIS 35859, at *5 (C.D. Cal. Feb. 24, 2021) (granting § 1782 discovery after ruling that, "[b]ased on the information set forth in [a] Declaration, the Court finds that the future proceeding described therein is within reasonable contemplation, and that each of the Petitioners expects to be a claimant in that proceeding.").

Third, the Vessel (and hence the documents and evidence onboard) will be at the Port of Long Beach on or about March 31, 2021, as the Vessel conducts

container cargo operations. Therefore, the persons from whom the discovery is sought are (or will be) found within this district when HL obtains the discovery.

Based on the foregoing, the statutory requirements set forth in *In re Dubey* and § 1782 are satisfied.

## B.    The § 1782 Discretionary Factors all Weigh in Favor of Granting HL's Application

Even if the statutory prerequisites are satisfied, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. Rather, a district court retains broad discretion to grant or deny a § 1782 application and to determine what discovery, if any, should be permitted. *Id*. Under *Intel*, the Court should consider the following non-exhaustive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the discovery request is an attempt to avoid foreign evidence-gathering restrictions; and (4) whether the discovery request is "unduly intrusive or burdensome." *Id*. at 264–66. However, "[t]he district court [is] not required to address explicitly every factor or argument, nor [is] it required to issue a written order." *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (citing *United States v. Sealed 1*, 235 F.3d 1200, 1206 (9th Cir. 2000) (noting the broad discretion afforded the district courts under § 1782 and the lack of specific guidance with which to exercise that discretion)).

Regarding the first factor, the U.S. Supreme Court has observed that the need for § 1782 assistance is of particular importance when the entity from whom discovery is sought is a non-party in the underlying foreign proceeding: "nonparticipants in the foreign proceeding may be outside the foreign tribunal's

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel,* 542 U.S. at 264. The Vessel and its registered owner may not be parties to the German proceedings with the cargo claimants. Moreover, the Vessel is Japanese-flagged, its registered owner is a Japanese company, its bareboat charterer is a Panamanian company, its manager is a Singaporean company, and the crew are extremely unlikely to include any German citizens. As such, the anticipated German tribunal would not be empowered to compel the Vessel or its owners, managers, and crew to produce the requested documents or testimony in connection with HL's defense of the cargo claims. Absent an order from this Court permitting HL to serve subpoenas seeking documents, crew depositions, and access to the Vessel for inspection, HL may lose the only opportunity to procure critical evidence for use in German litigation. The first discretionary factor thus weighs in favor of granting HL's application.

The second factor also favors HL's application. This factor takes into account the "nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign court to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. This Court has observed that "when evaluating whether foreign tribunals would accept U.S. assistance, courts look for 'authoritative proof that a foreign tribunal would <u>reject</u> evidence obtained with the aid of section 1782.'" *Siemens AG v. W. Dig. Corp*., No. 8:13-cv-01407-CAS-(AJWx), 2013 U.S. Dist. LEXIS 159266, at *7 (C.D. Cal. Nov. 4, 2013) (quoting *Euromepa, S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1100 (2d Cir. 1995)) (emphasis in *Siemens AG*). *Seimens AG* granted § 1782 discovery upon the applicant's uncontested testimony that a German court would consider the evidence. *Id*. Courts have also ruled that the burden of demonstrating that the foreign tribunal would be unreceptive to the evidence rests with the party

opposing the application. *See Bayer AG*, 146 F.3d at 196; *see also In re Owl Shipping, LLC*, Civil Action No. 14-5655 (AET)(DEA), 2014 U.S. Dist. LEXIS 148088, at *3 (D.N.J. Oct. 17, 2014).

Here, German counsel has advised HL that the German tribunal will consider the evidence. Kennedy Dec., ¶ 16. There is no contrary allegation and certainly no "authoritative proof" that the German court would reject the evidence HL seeks. Accordingly, the second discretionary factor also favors granting HL's application.

The third discretionary factor considers whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Courts concentrate on the apparent motivation for the request and not on foreign discovery rules that parties seldom have on hand. For example, *In re Joint Stock Co. Raiffeinsenbank* weighed this factor in favor of discovery when granting the application would allow more discovery than the foreign tribunal. No. 16-mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090, at *19 (N.D. Cal. Nov. 2, 2016) (citing *Heraeus Kulzer, GmbH v. Biomet, Inc. (Heraeus)*, 633 F.3d 591, 597 (7th Cir. 2011) (seeking more discovery than German discovery procedures allow was not found to be an attempt to circumvent German law because a German litigant "cannot obtain even remotely comparable discovery by utilizing German procedures[.]")). After all, as the Supreme Court held, "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. 241 at 261; *see also Mak v. For the Issuance of Discovery in ex rel. Foreign Proceeding Pursuant to 28 U.S.C. 1782*, 2012 U.S. Dist. LEXIS 98577, 2012 WL 2906761 (N.D. Cal. July 16, 2012) (observing that "[t]he Supreme Court has consistently held that § 1782 does not

13

contain a 'foreign-discoverability requirement'—*i.e.*, there is no requirement that the information sought be discoverable under the law governing the foreign proceeding.").

Similarly, HL is not attempting to end-run German proof-gathering restrictions or policies and is not aware of any legal authority in Germany that holds that foreign discovery is not allowed and is considered an end run around any prohibition on such discovery under German law. Kennedy Dec., ¶ 16. Instead, the application is a good-faith attempt to acquire highly relevant evidence that HL needs to prepare for foreign proceedings and that may be lost forever absent the order it seeks. Under the relevant case law, even if HL obtains more evidence than a German court would order produced, § 1782 discovery is still warranted. Accordingly, this factor weighs in favor of granting the requested discovery.

The final *Intel* factor concerns whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In assessing this factor, a district court should apply the standards of Federal Rule of Civil Procedure 26. *See, e.g.*, *MetaLab Design, Ltd. v. Zozi Int'l, Inc.*, No. 17-mc 80153-MEJ, 2018 U.S. Dist. LEXIS 5448, at *4 (N.D. Cal. Jan. 11, 2018) (concluding that the petitioner's discovery request was overbroad under the standards of Fed. R. Civ. P. 26(b)(1)); *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."); *see also* Fed. R. Civ. P. 26(b)(1). Under Rule 26, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality depends, in part, on "whether the burden or expense of the proposed discovery outweighs its likely

benefit." *Id*. Moreover, "the court should be particularly wary of denying [§ 1782] discovery on relevance grounds." *See In re Application Pursuant to 28 U.S.C. § 1782*, No. M19-70, 2008 U.S. Dist. LEXIS 30617, at *33 (S.D.N.Y. Mar. 31, 2008) (finding it "inappropriate" to deny a § 1782 application on relevance grounds "[g]iven the broadly permissive standard by which a court evaluates the relevance of discoverable material, and the parties' presentation of a factual dispute regarding the relevance of the discovery sought.").

Here, the proposed subpoenas set forth a limited number of documents covering a limited time frame and a limited amount of depositions. The documents being sought from the Vessel are those maintained in the normal course of business and are directly relevant to HL's defense of cargo claims against it. The Vessel inspection will allow identification and preservation of key evidence from the ship. The depositions will also aid in this discovery process and the defense of these cargo claims. If the crew members are not deposed now, they are likely to leave the ship and forever be unavailable to HL to obtain eye witness testimony relating to the incident. Also, HL plans to provide this Court's order and the subpoenas to the attorneys for the Vessel owner, and to local counsel if any are appointed, prior to her arrival in Long Beach so as to minimize any disruption with respect to Vessel operations while she is in port. Accordingly, the final *Intel* factor also weighs in favor of HL's application.

## IV.  **CONCLUSION**

HL has satisfied the statutory requirements under 28 U.S.C. § 1782 for obtaining discovery in aid of foreign proceedings. The discretionary factors set forth by the U.S. Supreme Court weigh heavily in support of granting the requested relief. The testimony, documents, and items sought by HL are vital to HL's defenses and limited in nature. Therefore, an order is warranted granting HL's Application and permitting HL to serve the subpoenas attached to the

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

1  application on the master and other officers of the M/V ONE APUS while it is

2  present in this judicial district.

3

4      Dated this 26th day of March, 2021.

5                                    SCHWABE, WILLIAMSON & WYATT, P.C.

6

7

8      /s/ Philip R. Lempriere
       Philip Lempriere, CASB #143613
9      Email: plempriere@schwabe.com
       *Attorney for Hapag-Lloyd Aktiengesellschaft*

10  PDX\AMU\30344784.4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX PARTE APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

EXHIBIT A

Philip Lempriere (State Bar No. 143613)
Email: plempriere@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711
Facsimile: 206.292.0460
*Attorneys for Applicant,*
*Hapag-Lloyd Aktiengesellschaft*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| In re Application of | No.: |
| HAPAG-LLOYD AKTIENGESELLSCHAFT | SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF THE PREMISES IN A CIVIL ACTION |
| Applicant, | |
| For Order Authorizing Discovery For Use In Foreign Proceedings Under 28 U.S.C. § 1782 | |

TO:     Master of M/V ONE APUS (IMO# 9806079)
        Port of Long Beach
        Long Beach, California

☒ YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE OF TESTIMONY | DATE AND TIME: |
|---|---|
| **Port of Long Beach, California**<br>**M/V ONE APUS (IMO# 9806079)** | **April 6, 2021**<br>**9:00 a.m. (Pacific time)** |

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspections, copying, testing, or sampling of the material:

   ***See Attachment A.***

Page 1 -     SUBPOENA TO MASTER OF M/V ONE APUS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

| PLACE: | DATE AND TIME |
|---|---|
| **Port of Long Beach, California**<br>**M/V ONE APUS (IMO# 9806079)** | **April 6, 2021**<br>**9:00 a.m. (Pacific time)** |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

| | DATE |
|---|---|
| Clerk of the Court | |
| _____ | |
| **OR** | |
| Attorney's Signature | |
| By: /s/ *Philip Lempriere*<br>Philip Lempriere, CASB #143613<br>plempriere@schwabe.com<br>1420 5th Avenue, Suite 3400<br>Seattle, WA 98101-4010<br>Telephone: 206.622.1711<br>Facsimile: 206.292.0460 | March 25, 2021 |
| ***Attorneys for Applicant Hapag-Lloyd***<br>***Aktiengesellschaft*** | |

The name, address, e-mail address, and telephone number of the attorneys representing Hapag-Lloyd Aktiengesellschaft, who issue or request this subpoena, are:

Philip Lempriere, CASB #143613
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Page 2 -      SUBPOENA TO MASTER OF M/V ONE APUS

SCHWABE, WILLIAMSON &<br>WYATT, P.C.<br>Attorneys at Law<br>1420 5th Avenue, Suite 3400<br>Seattle, WA 98101-4010<br>Telephone: 206.622.1711<br>Fax: 206.292.0460

PDX\30455608.1.docx

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

    **(i)** is a party or a party's officer; or

    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** **Command to Produce Materials or Permit Inspection.**

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** **Quashing or Modifying a Subpoena.**

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** **Claiming Privilege or Protection.**

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and

    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

Page 3 -      SUBPOENA TO MASTER OF M/V ONE APUS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

## PROOF OF SERVICE

| DATE SERVED | PLACE |
|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the State of California that the foregoing information contained in the Proof of Service is true and correct.

Executed on

_____

    SIGNATURE OF SERVER

DATE/PLACE

    ADDRESS OF SERVER

Page 4 -   SUBPOENA TO MASTER OF M/V ONE APUS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

**Attachment A**

**ONE APUS, Container loss incident November 30, 2020**
**List of Documents and information request**

<u>**Notes & Definitions**</u>

1.  Hapag-Lloyd AG, demands that ONE and vessel owner and manager protect and preserve all documents, records, logs, and ESI requested by Hapag-Lloyd AG, in addition to all physical evidence arising from, related to, or in connection with this incident and reserve the right to extend the request list as necessary.

2.  **Whole Voyage** means the period from end of sea passage for the first port that a container was loaded onto the vessel that was on-board at the time of the incident up until the date of this request.

3.  **Subject Voyage** means from arrival Yantian, China, until arrival Kobe, Japan in November – December 2020.

4.  **SMS** means the documented management system pursuant to the ISM Code and all other circulars, orders, bulletins, directives, or communications of a similar nature that provide instruction and/or guidance in respect of the operation of the Vessel.

5.  Email communications should be provided in soft copy as a ".pst" file or similar with all original meta data preserved within the communication.

6.  Where any records are in an electronic format, whether pursuant to a proprietary software, bespoke software or generally available software, (such as Excel or Word), the original files should be preserved and provided along with the attendant meta data.

**1.**   <u>**Inspections**</u>

    1.1      Marine Surveyor inspection as needed of conditions and copying of relevant data and information relating to the casualty including without limitation:

       1.1.1   On-deck and below-deck areas where cargo was stowed, including but not limited to lost or damaged cargo;

       1.1.2   The ship's bridge or wheelhouse from which the officers navigated the vessel;

       1.1.3   The ship's office and/or cargo control room; and

       1.1.4   The engine room and engine control room.

    1.2      Expert inspection of conditions and copying of data form the ship's electronic equipment including without limitation:

       1.2.1   Electronic Chart Display Information System and any similar systems ("ECDIS");

       1.2.2   Voyage Data Recorders ("VDR");

       1.2.3   Cargo stowage and cargo lashing-related computer programs;

       1.2.4   Vessel stability computer programs;

       1.2.5   Weather routing systems; and

       1.2.6   Other ship's systems that relate to navigation, voyage planning, and the ship's propulsion, auxiliary, and related equipment and machinery.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA. 98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

**2.** **General Information and Trading Certificates**

    2.1     Vessel particulars sheet.
    2.2     Latest Q88.
    2.3     Continuous Synopsis Record from new build.
    2.4     Certificate of Registration.
    2.5     Bareboat certificate.
    2.6     Tonnage certificate.
    2.7     Loadline certificate.
    2.8     Safety construction certificate with attachments.
    2.9     IOPCC Certificate and Form A.
    2.10    SMC with endorsement on the rear.
    2.11    DOC with endorsement on the rear.

**3.** **Electronic Stored Data**

    3.1     A mirror image of the Load Computer with all software, files, and ESI, including, but not limited to, stack weights, tier weights, lashing forces, vessel trim and stability, bay and stow plans, etc. for the Whole Voyage and any applicable operators manual.
    3.2     A mirror image of any computer located on the bridge, cargo control room, and engine control room, which belongs to the vessel and contains shipboard files, communications, records, ESI, etc.
    3.3     An electronic version of the complete BAPLIE.
    3.4     All pre stow and final load plans and ESI for the Whole Voyage.
    3.5     All Bon Voyage System (or similar type system) software, files, and ESI for the subject voyage, including, but not limited to, weather reports and information, in addition to all forecasting data relative to synchronous or parametric rolling, and any other ship movements for the Subject Voyage; and any applicable operators manual.
    3.6     All ESI for the Subject Voyage including, but not limited to, rolling, pitching, heaving, and other vessel movement in the seaway.
    3.7     All ESI for the Subject Voyage stored in ECDIS; and any applicable operators manual.
    3.8     Any ESI or printed data or alarms loggers on the bridge or in other locations as to the operation and functioning of all bridge, navigation and steering machinery and equipment for the Subject Voyage.
    3.9     Any ESI or printed data or alarm loggers in the engine room or in other locations as to the operation and functioning of all engine room related machinery and equipment for the Subject Voyage.
    3.10    All engine order telegraph records for the Subject Voyage, whether in paper or ESI form.
    3.11    All course recorder movements for the Subject Voyage, whether in paper or ESI form.
    3.12    All positioning and speed records for the Subject Voyage, whether in paper or ESI form.
    3.13    To the extent not covered by the above, all electronically saved data from the voyage data recorder or other similar recording systems, for the Subject Voyage, including audio.

**4.** **Weather**

Page 6 -   SUBPOENA TO MASTER OF M/V ONE APUS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA. 98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

4.1    All weather forecasts received for the Subject Voyage.

4.2    Details of any subscription service used to provide weather details to the vessel.

4.3    Downloads from weather information services relied on in decision making showing forecast wind speed, waves, swell etc. for the Subject Voyage.

4.4    Tracking and weather routing details to and from the vessel during the Subject Voyage.

4.5    Barograph for Subject Voyage.

**5.**    **Communications**

5.1    All communications to and from the vessel during the Subject Voyage regarding the weather, the routing of the vessel, condition of the vessel, change in course and/or speed, vessel rolling, concerns regarding the vessel stow, and loss or damage to containers.

6.    **Cargo Securing & Vessel Condition**

6.1    Full copy of Class Society stamped Cargo Securing Manual and a copy of Approval Certificate/ Design Appraisal Document or letter issued in relation to the approval.

6.2    Lashing Program:

   6.2.1    Approval certificate/Design Appraisal Document (DAD);

   6.2.2    Lashing Test conditions submitted and approved;

   6.2.3    Lashing Program Parameters – General: roll angle and period, pitch angle, wind speed, vessel speed, lashing angle, lashing stiffnesses (both short and long), container door and closed end stiffnesses, lashing bridge stiffnesses, height and offset from each row centreline of the lashing securing point on the vessel/lashing bridge; Safe Working Loads for containers, lashings and securing fittings;

   6.2.4    Lashing Program Parameters – Wind: settings for wind force on both fully exposed and partially exposed stacks;

   6.2.5    Lashing Program Parameters – Environment: settings for geographical location of ship operation;

   6.2.6    Drawings of all lashing bridges, hatch covers and decks showing the location of fixed container fittings and lashing securing points/d-rings;

6.3    Stress Monitoring Program

   6.3.1    Approval Certificate

   6.3.2    Records for the incident voyage

6.4    Approved stability book.

6.5    Preservation of all lashing/securing equipment associated with any cargo shift, labelled for identification purposes, indicating the slot number and location such as which corner casting of the container a twist locks was located, where a lashing bar was secured (at both the container and the vessel) etc. so as to be able to recreate the securing arrangements.

6.6    Details of any failed deck fittings/hatch cover fittings including location and photographs of sufficient quantity and quality to build a 3D model;

6.7    Container fittings and securing devices:

   6.7.1    Inventory at the time of the incident;

   6.7.2    Certificates;

   6.7.3    SMS requirements for inspection maintenance

   6.7.4    Records of inspection and maintenance

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA. 98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

6.7.5    All requisitions since delivery of vessel;

6.7.6    Delivery notes for all items provided since delivery of vessel;

6.7.7    SMS requirements for inspection of securing of cargo prior to departure from port and while on voyage;

6.7.8    Records evidencing above inspections undertaken, including records of any tightening or other adjusting of the securing arrangements for Whole Voyage.

6.8    Heavy weather:

6.8.1    SMS requirements in respect of navigation and cargo care when approaching, entering and being in heavy weather;

6.8.2    Records evidencing that the SMS requirements were followed for Subject Voyage;

6.9    Daily sounding records for ballast, fuel tanks and bilges with sounding tables for the Whole Voyage.

6.10    Record of visually observed draughts for each port (arrival and departure) for the Whole Voyage.

## 7. **Class Certificates & Class Documents**

7.1    Classification certificate.

7.2    Class of survey / statutory certificate status at time of incident.

7.3    Details of any conditions/recommendations/memorandums/visas of Class existing at the time of the incident.

7.4    Any short term certificates issued by Class as a consequence of incident including associated correspondence.

7.5    Class report into damage.

7.6    Class report reinstating class.

7.7    Class survey detailing damage arising from the incident and any condition/recommendation/memorandum/visa issued by Class as consequence of damage.

7.8    Class survey closing out any condition/recommendation/memorandum/visa issued by Class as consequence of damage.

## 8. **Vessel Inspections**

8.1    Last 3 Port State Control Inspection reports.

8.2    All correspondence generated as a consequence of the above inspection report/observations contained therein.

8.3    Last flag state report, (if any).

8.4    All correspondence generated as a consequence of the above inspection report/observations contained therein.

## 9. **Crew**

9.1    Crew list as at the time of the incident.

9.2    Minimum safe manning certificate.

9.3    Familiarization training on joining the vessel.

9.4    Certificate of Competency (Flag) for Master, C/E and all navigating and engineering officers.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

9.5 Certificate of Competency (State where examinations sat)for Master, C/E and all navigating and engineering officers.
9.6 Medical certificates for all crew.
9.7 Records of any alcohol tests taken after the incident.
9.8 Any communications to/from the vessel relating to alcohol test after the incident.
9.9 Last routine drug and alcohol test.
9.10 Last three sets of hand over notes for Master, Deck Officers and Engineering Officers.

For two months prior to the incident:

9.11 Watch keeping rotation.
9.12 UMS rotation.
9.13 Hours of rest records in respect of:
   9.13.1 Master;
   9.13.2 Navigational officers of the watch;
   9.13.3 Navigational rating;
   9.13.4 Chief Engineer;
   9.13.5 Engineering officers of the watch;
   9.13.6 Engineering ratings.
9.14 Training record from pre-briefing sessions attended in office before joining.

10. **General Vessel Plans**

(Please provide as pdfs if possible)

10.1 General Arrangement.
10.2 Capacity Plan.
10.3 Shell expansion plan.
10.4 Bay plan.
10.5 Cargo Securing plan.

11. **ISM Code**

11.1 Safety Management System Index and list of other SMS documents.
11.2 Safety Management System.
11.3 List of all reporting forms in use on the vessel.
11.4 Last External Audit.
11.5 Any correspondence arising from last external audit.
11.6 Last Internal Audit.
11.7 Any correspondence arising from last internal audit.
11.8 If the SMS requires navigational audits to be undertaken, either internal or external, the records of the last two audits.
11.9 Any correspondence arising from the last navigational audit.
11.10 Critical equipment list.
11.11 Risk assessments.
11.12 Permits to work.

12. **Post Incident Documents**

Page 9 - SUBPOENA TO MASTER OF M/V ONE APUS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

12.1   Protest.
12.2   Accident reports sent to company.
12.3   Accident reports sent to Flag.
12.4   Accident report sent to port / local authority.
12.5   Accident reports sent to charterers.
12.6   Statements of fact and crew statements, (if drafted).
12.7   Any communications with Owners / Managers / Charterers / Agents other parties about the incident.
12.8   Photos taken by crewmembers of cargo.
12.9   Videos taken by crewmembers of cargo.
12.10  Repair list.

13.   **Bridge – Documents**

13.1   Master's standing orders.
13.2   Result of sea trial.
13.3   Maneuvering poster.

14.   **Bridge/Engine Room – Log books / Records / Checklists**

(For Whole Voyage)

14.1   Official log book (if carried).
14.2   Rough deck/bridge log book.
14.3   Fair deck/bridge log book.
14.4   Rough engine log book.
14.5   Fair engine log book.
14.6   All ISM mandated checklists evidencing compliance with SMS such as:
  14.6.1  Pilot card;
  14.6.2  Pilot information sheet;
  14.6.3  Pre-departure check list;
  14.6.4  Daily checklists;
  14.6.5  Checklists for special contingencies such as fog, heavy weather etc.;
  14.6.6  Pre-arrival checklists.
14.7   GPS Log.
14.8   GPS print out.
14.9   Compass error log.
14.10  Master's night orders.
14.11  Bridge Bell/movement book.
14.12  Engine Bell/movement book.
14.13  GMDSS log book.
14.14  Copy of distress/pan pan/securite message.

15.   **Bridge - Navigation**

15.1   Berth to berth passage plan.
15.2   Check list for passage plan.

Page 10 - SUBPOENA TO MASTER OF M/V ONE APUS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx

15.3 All sources of published material used in preparing the passage plan / preparing for port entry such as pilot books, Guide to port entry etc. (In addition to making a copy of the material pages, also copy the title page of the publication showing the name and edition date / number. For nautical publications that have a scheme of corrections, also copy the page recording the corrections that have been made.)

## 16. **Cargo – General**

16.1 Statement of facts for each port during the Voyage.
16.2 Photos taken during loading, completion of loading, completion of lashing.
16.3 Cargo / Deck log.
16.4 Ballasting / de-ballasting plan.
16.5 Dangerous cargo manifest.
16.6 Chief Officer's written orders to crew for cargo operations.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206.622.1711
Fax: 206.292.0460

PDX\30455608.1.docx